UNITES STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

UNITED STATES OF AMERICA

        v.                            17 Cr. 680 (CM)

MICHAEL WRIGHT, et ano.

        Defendants.

---------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF
# PRETRIAL MOTIONS ON BEHALF OF MICHAEL WRIGHT

                                                                  Alan S. Futerfas
                                                                   Law Office of Alan S. Futerfas
                                                                   565 Fifth Avenue
                                                                   New York, New York 10017
                                                                   (212) 684-8400
                                                                   asfuterfas@futerfaslaw.com
                                                                   *Attorney for Michael Wright*

*On the memorandum*
Ellen B. Resnick

**PRELIMINARY STATEMENT**

Defendant Michael Wright moves pursuant to Federal Rule of Criminal Procedure 14 for a severance from his co-defendant, Craig Carton, in order to preserve both Wright's constitutional right to present a defense and Carton's countervailing right to a fair trial. Evidence from defense witnesses will support a claim that Wright lacked the requisite knowledge and intent to commit the crimes charged in this case. Some of this evidence may be harmful to Craig Carton. A severance will also preserve judicial resources by avoiding the distraction of sidebars and objections and the risk of jury confusion and a mistrial. In addition, Wright requests all *Brady* and *Giglio* material promptly, and all § 3500 material reasonably in advance of trial, especially concerning David Molner, who may well be an unindicted coconspirator.

**STATEMENT OF FACTS**

**1.   Introduction**

This case concerns allegations that a hedge-fund, as well as other investors, were defrauded out of funds that were invested for the purchase of bulk tickets for live concerts that were to be resold in the secondary market. In a related SEC civil action, the same allegations were charged against Carton and Joseph Meli ("Meli"), an uncharged alleged coconspirator in this case. Wright is not a defendant in the SEC action. Meli was also charged in a separate criminal action for his role in the same allegations charged here; he pled guilty and was recently sentenced.

As set forth below, Wright will argue at trial that he lacked knowledge and criminal intent. He denies participating in, or knowing of, allegedly false representations, including phony agreements, that the government has claimed were used to defraud investors.

## 2. **The Indictment**

On September 6, 2017, Craig Carton and Michael Wright were arrested on a complaint (the "Complaint") and charged with conspiracy to commit securities fraud and wire fraud in violation of 18 U.S.C. § 371 (Count One); wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Count Two), and securities fraud in violation of 15 U.S.C. § 78j(b) & 78ff, 17 U.S.C. § 240.10b-5 and 18 U.S.C. § 2. (The Complaint is annexed as Exhibit A to the Futerfas Affidavit.)

On November 2, 2017, the Complaint was superseded by a three-count indictment (the "Indictment"). (The Indictment is annexed as Exhibit B to the Futerfas Affidavit.) The Indictment alleges that, from August 2016 to August 2017, Carton, Wright and Meli (identified as "CC-1") conspired to solicit potential investors, "individuals and entities, to invest and finance the bulk purchase of tickets to live events which would be re-sold on the secondary market at a profit." (Ind. ¶ 11) Joseph Meli allegedly operated Advance Entertainment, LLC (the "CC-1 Entity"), which was purportedly in the business of purchasing tickets to live events and reselling those tickets at a profit. (Ind. ¶ 7) In April 2016, Carton and Wright allegedly established Tier One Tickets LLC ("Tier One") (the "Carton-Wright Entity-1") which claimed to be in the business of reselling tickets to live events at a profit. (Ind. ¶ 3) In September 2016, as alleged by the government, Carton and Wright established an entity called Advance M (identified as the "Carton-Wright Entity-2"). (Ind. ¶ 4)

Although the charges reference "investors," the indictment identifies a single victim – the "Hedge Fund" - in connection with the fraudulent scheme charged in Count One. The unnamed hedge fund is Brigade Capital Management ("Brigade"). Specifically, as part of a conspiracy to commit wire fraud and securities fraud charged in Count One, the indictment alleges that:

> based on representations made by [Carton and Meli], [Brigade] invested approximately $4.6 million with the understanding that the money would be used to finance the purchase of tickets to events ... and the tickets would be re-sold in the secondary market.

(Ind. ¶ 12) The indictment alleges that after defendants obtained Brigade's funds with false representations, Carton, Wright and Meli misappropriated those funds to pay personal debts and repay prior investors as part of a Ponzi-like scheme. (Ind. ¶ 11) Specifically, the indictment alleges that

> At least $1.6 million of [Brigade's] investment was used to pay back, in a Ponzi-like manner, individuals who had previously invested in ticket-related investments; approximately one million dollars was sent to casinos; and an additional approximately $1.19 million was wired to other individuals to whom Carton and/or Wright owed money, including over $600,000 to an individual who had provided Carton, via Wright, with a gambling-related loan.

(Ind. ¶ 12) Notably, the Indictment does not set forth facts suggesting that Wright made any misrepresentations to Brigade, was part of any agreement with Brigade to invest funds, or ever communicated with Brigade. Nor does the Indictment allege that Wright knew the content of any representations that were allegedly made to Brigade by Carton or Meli.

Count Two alleges that, between approximately August 2016 and August 2017, Carton and Wright committed wire fraud by obtaining money and property under false pretenses, by means of wire communication. (Ind. ¶ 18)

Count Three alleges that, between approximately August 2016 and August 2017, Wright and Carton committed securities fraud by making, and causing others to make, untrue statements of material fact, and material omissions. (Ind. ¶ 20)

3

### 3. The Complaint

The Complaint, sworn to by Agent Sean Sweeney on September 5, 2016, describes the government's allegations in greater detail and highlights additional evidence that is not referenced in the subsequent Indictment. It alleges that, between at least September 2016 and January 2017:

> [Carton, Meli and Wright] worked together to solicit individuals and entities to invest in the bulk purchase of tickets to live events which would be re-sold at a profit on the secondary market. In soliciting these investments, Carton and [Meli] both provided potential investors with purported agreements that gave [Meli] and Carton access to purchase blocks of tickets to live events. In fact, these agreements were fraudulent, and [Meli] and Carton had not, in fact, entered into these agreements.

(Cpt. ¶ 10)

For purposes of this motion, it is significant that the Complaint excludes Wright from the allegations of negotiating with, and then defrauding, Brigade. (See Cpt.¶¶ 12-14) The Complaint makes no reference to communications between Wright and Brigade, or Wright and any other purported investor in the alleged ticket scheme, let alone a communication involving a false representation.

The Complaint does not allege any false statements that Wright made to Brigade to obtain funds purportedly to finance the purchase of event tickets. (See Cpt. ¶¶ 12, 14) In particular, the Complaint references a series of documents sent to Brigade on December 7, 16 and 18, 2016, purporting to be agreements between Meli, on behalf of Advance Entertainment LLC, and a concert promotion company, demonstrating the former's right to purchase millions of dollars of concert tour tickets from the latter. (Id.) Although some of these agreements were signed by the CEO for the concert promotion company, Agent Sweeney alleges that no such

agreements existed, and that the CEO did not sign any such agreement. (Cpt. ¶ 12(f) and ¶ 14(b),(g))

To support the charges that Wright participated in a conspiracy to defraud Brigade and other investors, the Complaint relies on communications among Wright, Carton and Meli in which they discuss concerns about Carton's outstanding debt and repayment options. (Cpt. ¶ 11a-d) It also alleges specific transfers of Brigade's funds for ticket purchases allegedly misappropriated to repay earlier investors and outstanding debts. (Cpt. ¶15a-i, *see* id. ¶4a) Notably, none of the alleged communications or conduct involving Wright indicates that he knew what, if any, representations were supposedly made by Carton and Meli to induce the investment of funds that Wright allegedly misappropriated.

The Complaint alleges that "early-stage negotiations" between Carton and Brigade over investing in the ticket purchases began before October 12, 2016. (Cpt. ¶ 12a-b) There is no evidence that Wright knew what representations were made to Brigade that resulted, two months later, in Brigade's allegedly wiring funds for an investment in a ticket purchase scheme. Thus, while the Complaint alleges that Wright participated in the misappropriation of funds invested by Brigade, it does not set forth any evidence suggesting: (i) that Wright participated in making false statements to Brigade; (ii) that Wright knew that funds he allegedly transferred derived from Brigade; or, finally, (iii) that the transfer of Brigade's funds was prohibited by any agreement with Brigade.

### 4. The SEC Action

On September 6, 2017, the same day that Wright and Carton were arrested, the SEC filed a civil case in this district alleging the identical fraudulent scheme to procure $4.6 million from Brigade in and about December 2016 for bulk ticket purchases and the use of that money to repay gambling debts. *SEC v. Carton, et al.*, 17 cv 6764 (LGS). (The SEC Complaint is annexed as Exhibit C to the Futerfas Affidavit.) The SEC Complaint also identifies an additional victim - "Individual Investor." The Individual Investor was allegedly defrauded in August and September 2016 of $1 million that was intended as an investment in bulk tickets to live events but was misappropriated mostly to repay Carton's pre-existing gambling debts. (SEC Cpt. ¶¶ 21-30) Wright is not a defendant in the SEC civil case. Rather, Wright is identified as "Associate 1" (SEC Cpt. ¶ 13) even with respect to the same allegations charged against him in the Indictment. (See SEC Cpt. ¶¶ 31-61)

### 5. Joseph Meli's Related Prosecution

Meli was arrested in January 2017, more than seven months before Carton and Wright, and charged with his participation in the same overarching scheme as alleged here. *See United States v. Joseph Meli*, 17 Cr. 127 (KMW). (The Meli Indictment is annexed as Exhibit D to the Futerfas Affidavit.) Meli was charged with crimes relating to allegations that, from 2013 to January 2017, he obtained funds from Sentinel (a hedge fund) and other investors, by falsely representing that the funds would be invested in bulk ticket purchases for live events and thereafter misappropriating the funds. The government alleged that Meli used his entity, Advance, and provided falsified documents to investors purporting to demonstrate that Advance had access to large blocks of tickets to live shows. (See Meli Ind. ¶¶ 3, 4, 19)

On October 27, 2017, Meli pled guilty to securities fraud. In doing so, Meli stated that:

> I represented to certain investors that I had formal written contracts to purchase bulk tickets to live events. Those formal contracts did not always exist as I represented. In some cases, I showed investors contracts that appeared to be signed by people who had not signed them. And in some cases, those contracts did not accurately reflect the true agreements related to my bulk purchases of live events. I knew what I was doing was wrong.

(Meli Plea Tr. at 22 (17 Cr. 127(KMW), ECF 89-1)

Notably, the sentencing memorandum submitted on Meli's behalf describes his activities with Craig Carton in connection with the charges in Meli's case, including Carton's alleged role with respect to Brigade's investment. (See Meli Sent. Mem. pp. 43-44) (17 Cr. 127(KMW), ECF 121) The sentencing memorandum makes no suggestion that Michael Wright participated in Meli's conduct.

The charges against Meli also implicate David Molner. In Meli's sentencing memorandum, Meli states that Molner was directly involved with soliciting Brigade:

> The PSR states that Joe [Meli] provided Carton with these letter agreements [that were provided to Brigade]. PSR ¶ 28. In fact, while Joe was aware that Carton requested that these false letter agreements be created, David Molner actually drafted these letter agreements and sent them directly to Carton, based on Carton's desired specifications. *See* Ex. W (E-mail from Craig Carton to David Molner. (Dec. 16, 2016)).

(*See* Id. p. 44, n. 27)(Emphasis added)

6.  **The Davidoff Suit Against David Molner and Joseph Meli**

On May 12, 2017, Jonathan Davidoff, an attorney and investor, sued David Molner, along with four other investor victims, in state court alleging fraud and misrepresentation in connection with plaintiffs' investment in a bulk ticket purchase scheme (as amended, the "Davidoff Complaint"). (The Davidoff Complaint is annexed as Exhibit E to the Futerfas Affidavit, and the affidavit of Jonathan Davidoff, Esq., is annexed as Exhibit F to the Futerfas Affidavit.)

The Davidoff Complaint alleges, *inter alia*:

> Molner and Meli were business partners who used the Funding Agreements to defraud the Plaintiffs into investing in a ticket resale scheme for a concert series by ["Adele"], which was part of a greater Ponzi scheme for which Meli has already been indicted in the Southern District of New York. The Plaintiffs wired their investments to Advance, for which Molner and Meli shared the benefits of (sic). Molner was compensated for recruiting the Plaintiffs to invest with Advance, all while knowing that the investment was actually part of a Ponzi scheme, and then Molner [misappropriated plaintiffs' investment] to live a lavish lifestyle and to fund his own investments . . .

(Davidoff Complaint at 2.) The Davidoff Complaint alleges further that David Molner is a cooperating witness for the Southern District of New York. (Id. at ¶ 234)

As discussed in POINT TWO *infra*, David Molner may have exculpatory evidence as to Wright. Wright requests all *Brady and Giglio* material immediately, including evidence derived from Molner's potential or past cooperation. Further, as to all of the government's potential witnesses, including Molner, Wright seeks production of all § 3500 material reasonably in advance of trial.

## ARGUMENT

### POINT ONE

#### SEVERANCE IS WARRANTED TO PRESERVE WRIGHT'S ABILITY TO PRESENT A DEFENSE WHILE PROTECTING CARTON'S RIGHT TO A FAIR TRIAL.

Mr. Wright seeks a severance from Mr. Carton to preserve his right to present a defense while protecting Carton's right to a fair trial. At a joint trial, Wright will argue that he lacked knowledge and intent to commit the charged crimes and will elicit evidence that may be harmful to Carton.

### A.   The Legal Standard

While defendants who allegedly participated in the same act or transaction, or series of acts or transactions, may be charged together under Fed. R. Crim. P. 8(b), a court may nonetheless order separate trials if the joinder of defendants at trial "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). We recognize the strong "preference in the federal system for joint trials of defendants who are indicted together," because joinder promotes efficiency and serves the interests of justice by preventing the inequity of inconsistent verdicts. *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933 (1993).

When confronted with a high risk of prejudice from a joint trial, courts should consider whether "less drastic measures, such as limiting instructions" would suffice to cure the risk of prejudice. *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. Whether prejudice is sufficient to warrant severance is a highly fact-specific determination. *Id.* Moreover, the decision of whether to sever a trial is committed to the "sound discretion of the district court." *Id.* at 541, 113 S.Ct. 933; *United States v. Wilson*, 11 F.3d 346, 353 (2d Cir. 1993). Nonetheless, a district court should grant a severance under Rule 14 "if there is a serious risk that a joint trial would compromise a

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933; *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008).

We recognize that not every case posing the risk of mutually antagonistic defenses requires severance. *Zafiro,* 506 U.S. at 538. 113 S.Ct. 933 ("mutually antagonistic defenses are not prejudicial *per se*"). Indeed, defenses that are "somewhat antagonistic" do not rise to the level of "mutually antagonistic" unless they require the jury to "disbelieve the defense of one of the defendants if it accepts the defense of the other." *United States v. Shkreli*, 260 F. Supp.3d 247, 254 (E.D.N.Y. 2017), *see United States v. Tuzman*, 2017 WL 4785459 *7 (S.D.N.Y. 2018); *United States v. Yousef*, 327 F.3d 56, 151 (2d Cir. 2003).

However, the Second Circuit has determined that "mutually antagonistic or irreconcilable defenses may be so prejudicial *in some circumstances* as to mandate severance." *United States v. Salameh,* 152 F.3d 88, 116 (2d Cir. 1998) (emphasis added). Thus, severance is warranted when there are "serious concerns that under the unique circumstances presented, trying the defendants together would present a serious risk that [a defendant] will not receive a constitutionally fair trial" as when "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Shkreli*, 260 F. Supp.3d at 253, *quoting Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. Where a defendant will be deprived of a constitutional right if he proceeds to trial with a codefendant, the failure to anticipate the need for severance may result in a mistrial and the application of double jeopardy. *See United States v. Glover,* 506 F.2d 291, 298 (2d Cir. 1974)("If the Government had sought and obtained a ruling in advance [on the application of *Bruton* to certain evidence], the trial of Glover could have been severed from the trial of the other defendants, and he could have been tried alone").

Severance may be warranted to protect a defendant's right to a constitutionally fair trial where "in effect, a defendant's counsel becomes a second prosecutor...." *United States v. Copeland*, 336 F. Supp.2d 223, 224 (E.D.N.Y. 2004), *quoting United States v. Volpe,* 42 F. Supp.2d 204, 210 (E.D.N.Y.1999) (*quoting United States v. Tootick,* 952 F.2d 1078 (9th Cir.1991)) (internal quotations omitted). *See Copeland* 336 F. Supp.2d at 225 (severance is warranted in the rare circumstance where defendant's offer of evidence exculpating him while implicating codefendant will be far more prejudicial than mere finger-pointing); *Shkreli*, 260 F. Supp.3d at 256 (codefendant's right to a fair trial is implicated if one defendant acts as a "second prosecutor" and, essentially, bolsters the government's case with additional evidence implicating his codefendant in more conduct relevant to the charged crimes than the government will introduce in its case in chief).

The prospect of a second prosecutor was a serious concern warranting severance in *Shkreli*. There, defendant Shkreli sought a severance from his codefendant, Greebel, Shkreli's outside counsel to his two hedge funds and publicly traded company, because Greebel intended to argue that he was another victim of Shkreli's fraudulent conduct. The Shkreli Court ruled:

> Severance is granted because of the stated intention of Greebel's counsel . . that Greebel's defense team will act as a second prosecutor against Shkreli, by arguing that Shkreli is guilty and that Greebel is, himself, just another victim of Shkreli's fraud. . . Greebel's counsel plans to present evidence, even if the government does not, that Shkreli lied to Greebel and other attorneys and investors. The court recognizes that counsel's arguments are not evidence, and the jury will be so instructed, however, the underlying theme of Greebel's defense, that Shkreli lied, committed fraud, and is guilty, will permeate a joint trial to the substantial prejudice of Shkreli. Through such double prosecution of Shkreli by the government and Greebel, there is a serious risk that the jury would be prevented from making a reliable judgment about guilt or innocence even with limiting instructions by the court.
>
> Further, both defense counsel have indicated that they expect to raise frequent objections during the trial, both to the government's and each co-defendant's evidence, leading to a litany of side bar debates about various legal issues

11

> including limiting instructions, admissions by a co-defendant and related *Bruton* issues, and to the use of undocumented information obtained by Greebel during his legal representation of the entities controlled by Shkreli… Constant objections during opening statements, witness examinations and cross-examination, followed by side bars, will disrupt the flow of the trial and increase the length of the trial, will likely confuse the jury in what is already a complex case, and may risk prompting the jury to find both defendants guilty based on each defendant's arguments that he was deceived by the other, instead of deciding the case based on the evidence presented. …[F]rom a trial management perspective and to prevent substantial prejudice and jury confusion, severance is warranted.

*Shkreli*, 260 F. Supp.3d at 256-57.

### B. The Facts Here Warrant Severance

Severance is warranted here because Wright's defense -- that he did not intend to defraud, or conspire to defraud - will rest on significant evidence and argument that may be harmful to Craig Carton. The government's own evidence in this case, including thousands of email and text messages, its prosecution of alleged co-conspirator Joseph Meli, and the SEC civil action, all demonstrate a significant evidentiary disparity. Furthermore, witnesses we anticipate calling on Wright's behalf have knowledge of the facts and circumstances, and their testimony would be exculpatory as to Wright but harmful to Carton. In contrast to direct evidence against Wright's alleged co-conspirators, the prosecution of Wright will rely on indirect proof on the critical issue of intent, e.g., whether Wright intended to make, or aid and abet, materially false representations to investors. Wright will argue, *inter alia*, that he believed that Carton and Meli had access to bulk tickets for live events.

Wright's evidence will unduly prejudice co-defendant Carton at a joint trial. Carton is likely to vigorously oppose Wright's defense and claim it deprives him of a fair trial. He is likely to object and seek relief to limit the prejudicial effect of Wright's proof. For all of these reasons, a severance is warranted to preserve Wright's opportunity to present a defense and Carton's concomitant right to a fair trial.

12

## POINT TWO

### THE COURT SHOULD COMPEL THE GOVERNMENT TO PRODUCE ALL *BRADY* AND *GIGLIO* MATERIAL, AND § 3500 MATERIAL, INCLUDING REGARDING DAVID MOLNER

Mr. Wright seeks prompt production of evidence favorable to him under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194 (1963), as well as all evidence that would be useful to impeach the credibility of any government witnesses under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763 (1972). In particular, Wright requests an order compelling the government to produce *Brady* and *Giglio* material regarding David Molner – someone who may be an unindicted coconspirator in the instant case and the case against Meli.

It appears that David Molner is an important participant in the alleged scheme charged here to obtain funds from investors purportedly for bulk ticket purchases conducted through Advance. Among other proof, the discovery produced in this case implicates Molner in creating the falsified agreements that were presented to Brigade. Molner is described by Meli and Davidoff as a central protagonist in the scheme. There is a very strong basis to believe that the government possesses evidence from, or regarding, David Molner that would constitute *Brady* and *Giglio* material and must be disclosed.

As for the government's witnesses, which may include David Molner, we request production of all § 3500 materials reasonably in advance of trial.

13

### POINT THREE

### WRIGHT JOINS IN THE MOTIONS OF CRAIG CARTON AND RESERVES THE RIGHT TO SUPPLEMENT THESE MOTIONS WITH NEW EVIDENCE CLOSER TO TRIAL

Mr. Wright respectfully joins in Mr. Carton's motions and reserves the right to supplement the motions herein before trial.

### CONCLUSION

For the reasons set forth above, defendant Michael Wright respectfully requests that the Court grant the requested relief in its entirety.

Dated: New York, New York
       May 18, 2018

Respectfully submitted,

/s/ Alan S. Futerfas
Alan S. Futerfas
Law Office of Alan S. Futerfas
565 Fifth Avenue
New York, New York 10017
(212) 684-8400
asfuterfas@futerfaslaw.com
*Counsel for Michael Wright*

*On the memorandum*
Ellen B. Resnick