UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                          :

UNITED STATES OF AMERICA

                                          :

         - v. -

                                          :       17 Cr. 680 (CM)

CRAIG CARTON and
MICHAEL WRIGHT,                    :

                  Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' PRETRIAL MOTIONS

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

Elisha J. Kobre
Brendan F. Quigley
Assistant United States Attorneys
    - Of Counsel

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................. 1

ARGUMENT .................................................................................................................... 3

I.   Defendants' Motions for Severance Should Be Denied ............................................ 3

   A.   Relevant Facts ................................................................................................... 4

   B.   Applicable Law .................................................................................................. 7

   C.   Discussion ......................................................................................................... 10

II.   Carton's Motion to Dismiss Count Three of the Indictment Should Be Denied ................. 16

   A.   Applicable Law ................................................................................................. 16

   B.   Discussion ......................................................................................................... 18

     1.   The Indictment Satisfies the Pleading Requirements of Rule 7(c). ........................... 18

     2.   Carton's Motion to Dismiss Count Three Under Rule 12(b)(3)(B)(v) Should be Denied .............. 22

III.   Carton's Motion to Suppress Evidence Obtained From His Phone Should Be Denied ....... 23

   A.   Relevant Facts ................................................................................................... 23

   B.   Applicable Law ................................................................................................. 27

     1.   Review of a Magistrate Judge's Finding of Probable Cause ........................... 27

     2.   The Good Faith Exception to the Exclusionary Rule. ................................... 28

   C.   Discussion ......................................................................................................... 30

     1.   The Affidavit Contained Ample Probable Cause to Issue the Warrant. ............... 30

     2.   The Good Faith Exception Applies. ........................................................ 33

IV.   Wright's Motion for *Brady* Should be Denied as Moot and Wright's Motion for Early Disclosure of *Giglio* Material Should be Denied as Premature ........................... 33

CONCLUSION ................................................................................................................. 36

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Hamling v. United States*, 418 U.S. 87  (1974)..................................................................... 17

*Herring v. United States*, 555 U.S. 135 (2009)..................................................................... 29

*Illinois v. Gates*, 462 U.S. 213 (1983) ...................................................................... 28, 31, 32

*Mumuni v. United States*, 2018 U.S. Dist. LEXIS 17670  (S.D.N.Y. Jan. 31, 2018).................. 16

*Richardson v. Marsh*, 481 U.S. 200 (1987) ........................................................................... 8

*Russell v. United States*, 369 U.S. 749 (1962) ................................................................ 17, 21

*United States v. Abakporo*, 2013 WL 6188260 (S.D.N.Y. Nov. 25, 2013).............................. 9, 15

*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998) ............................................................ 19

*United States v. Awadallah*, 349 F.3d 42 (2d Cir. 2003) ......................................................... 28

*United States v. Bellomo*, 954 F. Supp. 630 (S.D.N.Y. 1997)............................................ 7, 10, 15

*United States v. Berlin*, 472 F.2d 1002 (2d Cir. 1973) ............................................................ 22

*United States v. Bongiorno*, 2006 U.S. Dist. LEXIS 24830 (S.D.N.Y. May 1, 2006) ................. 22

*United States v. Cardascia*, 951 F.2d 474 (2d Cir. 1992)................................................. 8, 10, 15

*United States v. Casamento*, 887 F.2d 1141 (2d Cir. 1989) ........................................ 7, 8, 12, 15

*United States v. Coffey*, 361 F. Supp. 2d 102 (E.D.N.Y. 2005)........................................ 17, 20, 22

*United States v. Copeland*, 336 F. Supp. 2d 223 (E.D.N.Y. 2004)......................................... 13, 14

*United States* v. *Coppa*, 267 F.3d 132 (2d Cir. 2001) .................................................................. 34

*United States v. Cremer*, 2012 U.S. Dist. LEXIS 182320 (S.D.N.Y. Dec. 13, 2012).................. 18

*United States v. D'Amelio*, 683 F.3d 412(2d Cir. 2012)......................................................... 17, 20

*United States v. Falso*, 544 F.3d 110 (2d. Cir. 2008) ............................................................... 29

*United States v. Ferrarini*, 9 F. Supp. 2d 284 (S.D.N.Y. 1998) ................................................ 15

*United States v. Flaharty*, 295 F.3d 182 (2d Cir. 2002) ........................................................... 19

*United States v. Frias*, 521 F.3d 229 (2d Cir. 2008)................................................................. 19

*United States* v. *Gallo*, No. 98 Cr. 338 (JGK), 1999 WL 9848 (S.D.N.Y. Jan. 11, 1999).......... 34

*United States v. Gonzalez*, 686 F.3d 122 (2d Cir. 2012) ........................................................... 21

*United States* v. *Griffith*, 867 F.3d 1265 (D.C. Cir. 2017)....................................................... 32

*United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014) ............................................................... 11

*United States v. Harwood*, 998 F.2d 91 (2d Cir. 1993) ................................................. 9, 12, 15

*United States v. Jackson*, 335 F.3d 170 (2d Cir. 2003) ............................................................ 11

*United States v. Jasorka*, 153 F.3d 58 (2d Cir. 1998)......................................................... 28, 33

*United States v. Jimenez*, 2011 U.S. Dist. LEXIS 8888 (S.D.N.Y. Jan. 26, 2011) ...................... 9

*United States v. Lee*, 833 F.3d 56 (2d Cir. 2016)..................................................................... 17

*United States v. Leon*, 468 U.S. 897 (1984)................................................................. 28, 29, 33

*United States v. Lumpkin*, 192 F.3d 280 (2d Cir. 1999) ........................................................... 11

*United States v. Mandell*, 710 F. Supp. 2d 368 (S.D.N.Y. 2010 ............................................... 28

*United States v. Martin*, 426 F.3d 68 (2d Cir. 2005) ............................................................... 28

*United States v. Mathis*, 767 F.3d 1264 (11th Cir. 2014) ....................................................... 31

*United States v. Moore*, 968 F.2d 216 (2d Cir. 1992)......................................................... 29, 33

*United States v. Nichols*, 912 F.2d 598 (2d Cir. 1990) ............................................................ 27

*United States v. Pagan*, 721 F.2d 24 (2d Cir. 1983)................................................................. 16

*United States* v. *Perez*, 940 F. Supp. 540 (S.D.N.Y. 1996) ...................................................... 34

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000)................................................................. 21

*United States v. Restrepo*, 1995 U.S. Dist. LEXIS 11853 (S.D.N.Y. Aug. 16, 1995).................. 9

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) ................................................................ 7, 15
*United States v. Rueb*, 00 Cr. 91, 2001 WL 96177 (RWS) (S.D.N.Y. Feb. 5, 2001) ................. 35
*United States v. Sabbeth*, 262 F.3d 207 (2d Cir. 2001) ......................................................... 17, 21
*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) ................................................................. 8
*United States v. Scott*, 637 Fed. Appx. 10 (2d Cir. 2015) .............................................. 8, 9, 13
*United States v. Shkreli*, 260 F. Supp. 3d 247 (E.D.N.Y. 2017) .............................................. 14
*United States v. Sindona*, 636 F.2d 792 (2d Cir. 1980) ............................................................ 16
*United States v. Singh*, 390 F.3d 168 (2d Cir. 2004) ...................................................... 28, 29, 31
*United States v. Snape*, 116 Fed. Appx. 317 (2d Cir. 2004) ............................................... 27, 30
*United States v. Stavroulakis*, 952 F.2d 686 (2d Cir. 1992) ............................................... 17, 21
*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013) ........................................................... 17
*United States v. Tramunti*, 513 F.2d 1087 (2d Cir. 1975) ........................................................ 16
*United States* v. *Trippe*, 171 F. Supp. 2d 230 (S.D.N.Y. 2001) ............................................... 35
*United States v. Trochelmann*, 1999 U.S. Dist. LEXIS 6769 (S.D.N.Y. May 10, 1999) ............ 18
*United States v. Vilar*, 729 F.3d 62, 80 (2d Cir.) .................................................................... 16
*United States v. Wagner*, 989 F.2d 69 (2d Cir. 1993) .................................................. 27, 28, 30, 31
*United States v. Walker*, 142 F.3d 103 (2d Cir. 1998) ............................................................... 7
*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999) .......................................................... 16, 20
*United States v. Williams*, 540 U.S. 36 (1992) ....................................................................... 18
*United States v. Yannotti*, 541 F.3d 112 (2d Cir. 2008) ................................................... passim
*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) ........................................... 8, 9, 10, 15
*United States* v. *Yu*, No. 97 Cr. 102 (SJ), 1998 WL 57079 (E.D.N.Y. Feb. 5, 1998) ................. 34
*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007) ....................................................................... 28
*Williamson v. United States*, 512 U.S. 594 (1994) ................................................................. 11
*Zafiro v. United States*, 506 U.S. 534 (1993) ................................................................. passim

**State Cases**

*Marc Adler, et al., v. David Molner, et al.*, Sup. Ct. New York Cty., Index No. 0154462/2017 ... 5

**Federal Statutes**

15 U.S.C. § 78ff ............................................................................................................... 1, 23
15 U.S.C. § 78j(b) ........................................................................................................... 1, 23
18 U.S.C. § 1343 .............................................................................................................. 1, 23
18 U.S.C. § 1956 .................................................................................................................. 23
18 U.S.C. § 1957 .................................................................................................................. 23
18 U.S.C. § 2 ......................................................................................................................... 1
18 U.S.C. § 371 ..................................................................................................................... 1
Fed. R. Crim. P. ............................................................................................................. 16, 18

**Federal Regulations**

17 CFR § 240.10b-5 ...................................................................................................... 1, 25, 31

The Government respectfully submits this memorandum of law in response to: (1) defendants Craig Carton and Michael Wright's motions for severance; (2) Carton's motion to dismiss Count Three of the Indictment; (3) Carton's motion to suppress evidence obtained from a cell phone seized from him incident to arrest and searched pursuant to a search warrant; and (4) Wright's motion for *Brady* material and early disclosure of *Giglio* material. For the reasons set forth below, the motions should be denied.

## BACKGROUND

Defendants Craig Carton and Michael Wright were arrested on September 6, 2017 pursuant to warrants issued on the basis of a criminal complaint, 17 Mag. 6692, dated September 5, 2017 (the "Complaint"). On November 2, 2017, a grand jury in this District returned an indictment, 17 Cr. 680 (CM) (the "Indictment"), charging Carton and Wright in three counts. Trial is scheduled to begin on October 29, 2018.

Count One of the Indictment charges both defendants with conspiracy to commit securities fraud and wire fraud, in violation of 18 U.S.C. § 371. Count Two charges both defendants with committing wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. Count Three charges both defendants with committing securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 CFR § 240.10b-5 and 18 U.S.C. § 2.

As alleged in the Indictment, during the period of the charged conspiracy from in or about August 2016 through in or about August 2017, Carton, Wright, and Joseph Meli (a co-conspirator referred to in the Indictment as "CC-1"), worked together to "solicit individuals and entities to invest in and finance the bulk purchase of tickets to live events, which would be re-sold at a profit on the secondary market." (Indictment ¶ 11). These investments were solicited through misrepresentations by the conspirators. (*Id.*). Upon obtaining the investor funds, the three

conspirators "misappropriated those investor funds, using them to, among other things, pay personal debts and repay prior investors as part of a Ponzi-like scheme." (*Id.*).

As part of that scheme, Carton, Wright, and Meli communicated with each other in December 2016 about "a potential agreement between [Carton] and [an investment management firm identified as the "Hedge Fund"], relating to the purchase of tickets to live events." (Indictment ¶ 16(a). Carton and Meli solicited the Hedge Fund to invest a total of approximately $4.6 million "with the understanding that the money would be used to finance the purchase of tickets to events promoted by," among other things, two companies: a California based company in the business of promoting live music and entertainment events (the "Concert Promotion Company") and a New York based company that operated two arenas (the "Sports and Entertainment Company"). (Indictment ¶¶ 8-10, 12). Carton and Meli further represented to the Hedge Fund that "the tickets would then be re-sold in the secondary market." (Indictment ¶ 12).

On or about December 8, 2016, Carton formally entered into an agreement with the Hedge Fund under which the Hedge Fund would finance the purchase of tickets to live events for resale by a company established by Carton (the "Carton Entity") purporting to be in the business of purchasing tickets to live events and reselling those tickets at a profit. (Indictment ¶¶ 5, 16(b)). Wright represented himself as the Chief Financial Officer ("CFO") of the parent company of the Carton Entity. (Indictment ¶ 5).

The Indictment alleges that, contrary to the representations to the Hedge Fund, the conspirators used the Hedge Fund's investment, among other things, to repay prior unrelated debts, including gambling debts. (Indictment ¶¶ 16(b)-(h)). The Indictment provides examples of this misappropriation which occurred almost immediately after the defendants received the investment

funds and in a manner that reflects a high degree of coordination among the conspirators. The following examples, as alleged in the Indictment, are illustrative of the misappropriation:

- On or about December 8, 2016, the same day the Hedge Fund agreed to invest with Carton, the Hedge Fund wired an initial investment of $700,000 to Advance Entertainment, an entity operated by Meli that also purported to be in the business of purchasing tickets to live events and reselling those tickets at a profit (referred to in the Indictment as the "CC-1 Entity") (Indictment ¶¶ 7, 16(b)). Meli wired that same sum to a bank account for an entity jointly established by Carton and Wright (the "Carton-Wright Entity-2 Account"). Days later, on or about December 12, 2016, Wright wired $200,000 of this sum to an account controlled by Carton and the remaining $500,000 "to an individual who had previously provided CARTON with a short-term loan." (Indictment ¶¶ 4, 16(c)).

- On or about December 13, 2016, Wright emailed Carton and Meli about additional debts that would be coming due. Carton responded that he was "trying to bring in $3m this week for [two well-known rock bands]." (Indictment ¶ 16(d)). On or about December 18, 2016, Carton e-mailed the Hedge Fund a purported agreement between the Carton Entity and the Sports and Entertainment Company, relating to live event tickets. (Indictment ¶ 16(e)). The Hedge Fund then wired $2 million to the Sports and Entertainment Company to finance the purchase of tickets to events. But Carton immediately directed the Sports and Entertainment Company to re-direct the $2 million wire to a bank account for another entity jointly established by Carton and Wright (the "Carton-Wright Entity-1 Account"). (Indictment ¶¶ 3, 16(f)). The following day, Wright wired $966,000 of this sum to an account he controlled. (Indictment ¶ 16(g)).

The Indictment further alleges that "[i]n or about the spring of 2016, [Carton] made additional misrepresentations to the Hedge Fund regarding the status of its investment." (Indictment ¶ 16(h)).

## ARGUMENT

**I.    Defendants' Motions for Severance Should Be Denied**

The defendants' motions for severance should be denied because they cannot meet the high burden of demonstrating prejudice so severe it would deny them a fair trial. *First*, the vague and conclusory assertions of conflicting defenses in defendants' briefs and in affidavits submitted by Wright's former and present counsel do not demonstrate with any specificity defenses that are "mutually antagonistic" under Second Circuit law. *Second*, even if there were some tension

3

between the defenses offered, they amount to nothing more than the finger pointing common to many conspiracy trials. *Third*, nothing about a joint trial on the Indictment would constitute a miscarriage of justice and amount to a denial of a constitutionally fair trial.

### A. Relevant Facts

In support of their motions for severance, each of the defendants has submitted the same sworn affidavit by Jonathan M. Davidoff, Esq. (the "Davidoff Affidavit" or "Davidoff Aff.").[1] The Davidoff Affidavit represents that Davidoff is "prepared to testify about my first-hand knowledge of matters that appear to be central to the charges in this case"; "can testify to matters that strongly support the defense that Wright did not knowingly participate" in the charged offense; and that he overheard certain statements by Carton following Carton's arrest which he claims exculpate Wright. (Davidoff Aff. ¶¶ 7-10). These representations are, however, directly contradicted by Davidoff's prior representations to this Court and Davidoff's communications with the Government.

In particular, as the Court is aware, Davidoff represented Wright in this case from the time of Wright's arrest through November 29, 2017, when Davidoff was substituted by Wright's present counsel. Davidoff withdrew from this case following motions by the Government and Carton seeking to disqualify Davidoff as Wright's counsel on the basis that Davidoff was likely to be a sworn or unsworn witness at trial and had a potential conflict of interest. (Dkt. # 32, 34).[2]

---

[1] Davidoff provided his affidavit to each of the defendants. (*See* Affidavit of Robert C. Gottlieb (Dkt. # 58) ¶ 6 ("We have received an advance copy of Mr. Davidoff's affidavit directly from Mr. Davidoff . . .")); Futerfas Aff. (Dkt. # 50) ¶ 8).

[2] Davidoff's potential conflict of interest was a result of a civil suit Davidoff filed against co-conspirator Joseph Meli and David Molner, both of whom allegedly solicited Davidoff to invest in the ticket scheme charged in the Indictment. In particular, in or about the summer of 2017 prior to the return of the Indictment in this case, Davidoff filed a civil action against Molner in New York State Supreme Court, on behalf of himself and several other investors (the "Davidoff

4

In initially opposing disqualification, Davidoff made representations to the Court directly contradicting those he now makes in the Davidoff Affidavit. (Dkt. # 23). Contrary to Davidoff's present sworn statement that he has "first-hand knowledge of matters that appear central to be central to the charges in this case," he previously submitted a letter to this Court stating, among other things, that he was "not knowledgeable" and had no "relevant testimony" regarding the charges in this case:

- "[H]e [Davidoff] was *not a party or knowledgeable of any of either Defendants' alleged conduct in the instant action*, nor does counsel have any relevant testimony as to the facts that would be required or even helpful to establish any of the crimes charged in the Indictment . . ."

- "Undersigned counsel has *no testimony to provide* to the Government or the Defendants relating to . . . any of the allegations in the Indictment."

- "[O]ther than Mr. Wright . . . there are no other witnesses who could possibly testify in support of Mr. Wright's state of mind and knowledge regarding the funds in question, other than Mr. Carton."

(Dkt. # 23 at pp. 5, 6, 9 (emphases added)).

In connection with his opposition to disqualification, Davidoff likewise failed to mention witnessing any statements by Carton (or anyone else) that would be exculpatory as to Wright or otherwise relating to Wright's involvement in the charged crimes. Davidoff has provided no explanation for his contradictory statements and omission.

Davidoff's present sworn statement that he has "first-hand knowledge" that is "central" to the charged conduct in this case is also contradicted by his prior communications with the

---

Clients"), for fraud based upon alleged false representations made to him and others by Molner in soliciting investments in the ticket resale scheme. *See Marc Adler, et al., v. David Molner, et al.*, Sup. Ct. New York Cty., Index No. 0154462/2017 (the "Civil Case"). On or about October 27, 2017, Mr. Davidoff filed a second amended complaint in the Civil Case, adding Meli and Advance Entertainment as defendants. Davidoff's complaints in that case do not name or even reference Carton or Wright.

Government.  In the summer of 2017, prior to the charges in this case, Davidoff contacted and was subsequently interviewed by the Government concerning investments he made with Meli and Molner in the same scheme described in the Indictment.  Based on those interviews, additional information later provided by Mr. Davidoff, and other investigative steps, the Government has learned that Mr. Davidoff twice invested with Meli in the purchase of bulk tickets, in or about May 2015 and again in or about March 2016 (prior to the August 2016 through August 2017 period charged in the Indictment).  Davidoff told the Government that his investments were solicited by Molner who Davidoff understood to be working with Meli.  Davidoff also communicated with Meli about his investments.

During his interview, Davidoff was specifically asked about Carton and Wright but said nothing whatsoever about their involvement in the ticket scheme.  As to Carton, Davidoff said only that he (Mr. Davidoff) and Carton know each other through Mr. Davidoff's work for a charity run by Carton; in February 2016, Davidoff told Carton that he (Davidoff) was investing with Meli and asked whether Carton knew Meli; and in response to this inquiry, Carton stated that he (1) knew Meli, (2) didn't know about the investment opportunity offered by Meli, and (3) that Meli was a good guy. As to Wright, Davidoff stated that he knew Wright but had no knowledge of Wright's involvement in a ticket investment business with Meli.

Wright has also submitted an affidavit from his current attorney, Alan Futerfas (the "Futerfas Affidavit"), stating that Futerfas had discussions with a prospective witness who "may be willing to testify" but that Futerfas "has not yet been able to secure an affidavit from the witness."  (Futerfas Aff. ¶ 3).  The Futerfas Affidavit provides not even a general description of

6

what testimony would be given by this alleged witness except that it would purportedly "be advantageous to Michael Wright but detrimental to Craig Carton." (*Id.*).[3]

**B.  Applicable Law**

Where two defendants have been properly joined under Federal Rule of Criminal Procedure 8, a defendant seeking severance under Federal Rule of Criminal Procedure 14 has the "extremely difficult burden of proving not merely that he would be prejudiced by a joint trial, but that the prejudice would be so great as to deprive him of his right to a fair trial." *United States v. Bellomo*, 954 F. Supp. 630, 649 (S.D.N.Y. 1997) (quoting *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989)) (quotation marks omitted); *see also United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (severance is appropriate only if a defendant can establish a risk of prejudice that is "sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials"); *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993) ("The principles that guide the district court's consideration of a motion for severance usually counsel denial.").

There is a strong preference in the federal system for joint trials of defendants who are indicted together, as joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  "It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of

---

[3] Carton's brief states that Wright's counsel has also "indicated" to Carton's counsel that "Mr. Wright's defense team is procuring an affidavit and testimony from Mr. Meli – who will testify at trial exculpating Mr. Wright and inculpating Mr. Carton." (Carton Br. at 3).  It is unclear whether Meli is the "prospective witness" identified in the Futerfas Affidavit.

testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). This is particularly so where the case involves a common plan or scheme. *Id.* ("There is a preference in the federal system for joint trials of defendants who are indicted together . . . particularly . . . where, as here, the defendants are alleged to have participated in a common plan or scheme.").

The mere fact that two defendants advance defenses that are adversarial to one another "clearly does not, alone, require trials to be severed. Were this true, a virtual ban on multi-defendant conspiracy trials would ensue since conspirators raise many different and conflicting defenses." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1992). "Mere fingerpointing does not require severance." *Casamento*, 887 F.2d at 1154; *see also United States v. Scott*, 637 Fed. Appx. 10 (2d Cir. 2015) ("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance.").

The term "mutually antagonistic" has been adopted to describe a category of adversarial defenses where "accepting one defense requires that the jury must *of necessity* convict a second defendant." *United States v. Yousef*, 327 F.3d 56, 151 (2d Cir. 2003) (emphasis added); *see also Zafiro*, 506 U.S. at 542 (Stevens, J., concurring) (describing "mutually antagonistic" defenses as those as to which "acceptance of one . . . necessarily preclude[s] acceptance of the other and acquittal of the codefendant"). That is, "the defenses must conflict to the point of being so irreconcilable as to be mutually exclusive" meaning that "in order to accept the defense of one defendant, the jury must of necessity convict a second defendant." *Cardascia*, 951 F.2d at 484.

"At the threshold, defendants must articulate 'specific instances of legally cognizable prejudice.'" *United States v. Jimenez*, 2011 U.S. Dist. LEXIS 8888, at *16-17 (S.D.N.Y. Jan. 26,

2011) (citing *United States v. Harwood*, 998 F.2d 91, 95 (2d Cir. 1993) (internal quotation marks and citation omitted). *See also id.* (denying severance where "the defenses described by Rivera's motion are non-specific, and, contrary to Rivera's conclusory assertions, amount to little more than finger-pointing in an attempt to shift blame from one defendant to another"); *United States v. Restrepo*, 1995 U.S. Dist. LEXIS 11853, at *7-8 (S.D.N.Y. Aug. 16, 1995) (denying motion for a severance because the defendant's "conclusory assertion does not disclose what testimony Restrepo might give, and no statement by Restrepo has been submitted. These vague assertions are insufficient to justify a severance.").

However, the Supreme Court has held that even "mutually antagonistic defenses are not prejudicial *per se*," and that severance is not required when defendants adopt antagonistic defenses "even if prejudice is shown." *Zafiro*, 506 U.S. at 538-39. Rather, when defendants adopt mutually antagonistic defenses, severance is appropriate only if defendants can demonstrate "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. *See also Scott*, 637 F. App'x at 13 ("It is not enough to demonstrate that separate trials would have increased the chances of the appellant's acquittal . . . the defendant must instead show prejudice so severe that his conviction constituted a miscarriage of justice and amounted to a denial of a constitutionally fair trial") (quotations and quotation marks omitted).

"In those rare instances where a defendant establishes a 'high' risk of prejudice, however, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *United States v. Abakporo*, 2013 WL 6188260, at *3 (S.D.N.Y. Nov. 25, 2013) (quoting *Zafiro*, 506 U.S. at 539). In such a case, "the tailoring of the relief to be granted, if any, [is left] to the district court's sound discretion." *Id.*; *see also Yousef*, 327 F.3d at 150 ("the

9

fashioning of remedial steps to minimize prejudice to a defendant is committed to the sound discretion of the district court").

### C. Discussion

Defendants' motions for a severance are without merit.  Carton's main argument for severance is that Wright's defense includes witnesses "that are expected to point the finger at Mr. Carton to try to show Mr. Carton's guilt . . . as the approach to show Mr. Wright's innocence." (Carton Br. at 2).  Wright likewise asserts that his defense will involve witnesses whose "testimony would be exculpatory as to Wright but harmful to Carton." (Wright Br. at 12).  These bare assertions are wholly insufficient to justify severance.

*First*, the defendants have not articulated any specific adversarial defenses such that "accepting one defense requires that the jury must of necessity convict a second defendant." *Yousef*, 327 F.3d at 151 (2d Cir. 2003); *Cardascia*, 951 F.2d at 484 (to require severance, "the defenses must conflict to the point of being so irreconcilable as to be mutually exclusive" meaning that "in order to accept the defense of one defendant, the jury must of necessity convict a second defendant").  Defendants' vague and conclusory assertions that Wright's proposed defense might somehow be adverse to Carton fail to satisfy this threshold requirement.  *Jimenez*, 2011 U.S. Dist. LEXIS 8888, at *16-17 ("At the threshold, defendants must articulate 'specific instances of legally cognizable prejudice.'").

The defendants seek to meet their "extremely difficult burden," *Bellomo*, 954 F. Supp. at 649, through affidavits submitted by Davidoff and Futerfas.  These are both factually and legally insufficient to justify a severance.

As to the Davidoff Affidavit, it is vague, conclusory, and devoid of any specific evidence Wright intends to elicit that will require the jury "*of necessity* [to] convict [Carton]."  *Yousef*, 327

F.3d at 151 (emphasis added).  As an initial matter, the Court should disregard the affidavit as not credible.  Davidoff previously represented to this Court that he is "not knowledgeable" and has no "relevant testimony" regarding the charges in this case.  (Dkt. # 23, at pp. 5, 6, 9).  Now Davidoff swears to be in possession of some unspecified "first-hand knowledge of matters that appear to be central to the charges in this case." (Davidoff Aff. ¶10).  This is gamesmanship at best and the Court should reject it.

Moreover, even if the Court were to credit the Davidoff Affidavit, it is devoid of specific admissible testimony or other evidence that would result in mutually antagonistic defenses.  The only specific testimony Davidoff purports to offer is a single hearsay statement purportedly made by Carton after his arrest that Wright was "innocent" and had "nothing to do with it."  This statement – which, incredibly, Davidoff never disclosed to the Court when he sought to stay on as Wright's counsel – is plainly inadmissible as hearsay.[4]  But even if Wright was permitted to elicit this statement from Davidoff, it does not remotely necessitate a jury finding Carton guilty.  For one thing, Carton's purported statement that Wright is "innocent" does not preclude a jury finding that Carton is similarly not guilty.  And the meaning of "nothing to do with it" is far from clear, as e-mails, text messages, and bank records demonstrate Wright's personal and direct participation

---

[4] The statement does not appear to meet any exception to the hearsay rule if offered by Wright. For example, it does not qualify as a statement against interest under Federal Rule of Evidence 804(b)(3) as it is not self-inculpatory. *See United States v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003) ("[W]e have repeatedly emphasized that each particular hearsay statement offered under Rule 804(b)(3) must be separately parsed and must, itself, be self-inculpatory.") (citing *Williamson v. United States*, 512 U.S. 594, 599 (1994)).  Rule 403(b)(3) also requires "corroborating circumstances that clearly indicate [the statement's] trustworthiness" which, the Second Circuit has held, includes "both the declarant's trustworthiness and the truth of the statement." *United States v. Gupta*, 747 F.3d 111, 127 (2d Cir. 2014) (quoting *United States v. Lumpkin*, 192 F.3d 280, 287 (2d Cir. 1999)).  The proffered statements meet neither of these requirements, given the extensive allegations in the Indictment and Carton's close relationship with Wright.

in the scheme.  (*See, e.g.*, Indictment ¶ 16; Complaint ¶¶ 10-15).  To the extent this statement is interpreted as relating to intent, Carton's assertion that Wright lacked criminal intent does not require or even suggest an inference that Carton himself had such intent. Carton's purported statement to Davidoff is therefore both inadmissible and irrelevant to the issue of severance.

The remainder of Davidoff's submission is, as even Carton acknowledges "lack[ing] [in] specifics."  (Carton Br. at 11).  Davidoff's vague and conclusory assertions that he "can testify to matters that strongly support" Wright's innocence and his purported "first-hand knowledge of matters that appear to be central to the charges in this case" are plainly insufficient under Second Circuit law, which "[a]t the threshold" requires that the defendants "articulate 'specific instances of legally cognizable prejudice.'"  *Jimenez*, 2011 U.S. Dist. LEXIS 8888, at *16-17 (citing *Harwood*, 998 F.2d at 95).  The Davidoff Affidavit provides only vague and conclusory assertions and plainly fails to meet this threshold requirement.  *See, e.g., Restrepo*, 1995 U.S. Dist. LEXIS 11853, at *7-8 (vague and conclusory assertions insufficient to justify a severance).

The Futerfas Declaration likewise provides only the vague and conclusory possibility of a "prospective witness" who "may be willing" to testify in a way that would be "advantageous to Michael Wright but detrimental to Craig Carton."  (Futerfas Aff. ¶ 3).  Despite the fact that the Indictment was returned approximately seven months ago, however, Futerfas, has "not yet been able to secure an affidavit from the witness."  (*Id.*).  This failure to "articulate 'specific instances of legally cognizable prejudice,'" *Jimenez*, 2011 U.S. Dist. LEXIS 8888, at *16-17 (citing *Harwood*, 998 F.2d at 95), alone requires that severance be denied.

*Second*, even if the defendants' purported defenses were in some tension – and there are no specific facts to suggest they would be – this is precisely the sort of finger pointing the Second Circuit has held insufficient to constitute mutually antagonistic defenses. *Casamento*, 887 F.2d at

1154 ("Mere fingerpointing does not require severance."); *see also Scott*, 637 Fed. Appx. 10 ("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance.").

*Third*, even if the defendants could articulate some "mutually antagonistic" defenses, they cannot show prejudice so severe as to pose "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Nothing in the defendants' moving papers suggests a threat to their specific trial rights or any other such prejudice.

Carton relies principally on two Eastern District cases as a basis for severance. But far from supporting severance, those cases undermine the defendant's motion. *United States v. Copeland*, 336 F. Supp. 2d 223 (E.D.N.Y. 2004) involved the following "rare circumstances." *Id.* at 225. Three defendants, Vasquez, Copeland, and Rivers, were jointly charged with robbing a bank. The Government intended to put on evidence that Rivers and Vasquez entered and robbed the bank and Copeland drove the getaway car. *Id.* at 223. Vasquez however represented that he would elicit testimony that one or more witnesses identified Rivers and Copeland (not Vasquez) as the individuals who entered and robbed the bank. *Id.* The Government confirmed to the Court that witnesses had, in fact, identified Rivers and Copeland, but the government would not call those witnesses during its case in chief, as their testimony would be contrary to its theory of the case. *Id.*

The Court granted severance, based upon its findings that (1) "Vasquez has not simply made vague and unsupported allegations against his co-defendants; he has averred *specific facts* that will be elicited by neutral witness testimony," *id.* at 225 (emphasis added); (2) the opposing defenses went far beyond mere finger pointing: "A jury cannot logically accept both Copeland's

13

and Vasquez's defenses as true: Copeland's theory of defense (i.e., he was not involved in the bank robbery) is mutually antagonistic to Vasquez's theory (i.e., Copeland -- not Vasquez -- entered the bank to commit the robbery)," *id.* at 224; and (3) Vasquez's defense, which implicated Copeland, was "in contradiction of the government's theory" of the defense, a scenario in which "[t]he jury may convict Copeland based upon either the government's theory or Vasquez's theory," *id.* at 225. The Court held that granting severance under these "rare circumstances" presenting a "narrow issue" never before addressed "will not set a new standard of severance to be applied in virtually every conspiracy case." *Id.* at 225.

*Copeland* highlights why severance in this case would be inappropriate. Unlike, *Copeland* the defendants here have not provided any "specific facts," *Copeland*, 336 F. Supp. 2d at 225, but only "vague and unsupported" allegations of opposing defenses. *Id.* Moreover, the defendants have not remotely shown that their defenses cannot both be "logically accept[ed]" by a jury. *Id.* at 224. Wright's defense of lack of knowledge or intent (Wright Br. at 12; Carton Br. at 11) does not require a jury to find that Carton is guilty. And, further unlike *Copeland*, Wright's proposed defense is not "in contradiction of the government's theory" such that "[t]he jury may convict [Carton] based upon either the government's theory or [Wright]'s theory." *Id.* at 225. Wright's theory does not present a different theory of Carton's guilt. In sum, none of the "rare circumstances" in *Copeland* are present here.

Likewise, *United States v. Shkreli*, 260 F. Supp. 3d 247 (E.D.N.Y. 2017) does not support the severance arguments made here. As the Court in *Shkreli* noted, that case involves "unique circumstances," most notably that the two defendants are a corporate lawyer and his former client who intends to raise an advice of counsel defense. *Id.* at 255. Notably, no court has followed *Shkreli* since it was decided more than a year ago.

14

Contrary to the defendants' assertion, there is no reason to believe a joint trial will present "evidentiary sideshows" or "enhanced sparring," (Carton Br. at 12), beyond what is typical in multi-defendant cases tried before this Court.  And, if necessary, the Court can give appropriate limiting instructions.  *Abakporo*, 2013 U.S. Dist. LEXIS 168141, at *3 ("In those rare instances where a defendant establishes a 'high' risk of prejudice, however, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'") (quoting *Zafiro*, 506 U.S. at 539); *Yousef*, 327 F.3d at 150 ("the fashioning of remedial steps to minimize prejudice to a defendant is committed to the sound discretion of the district court").

Because the defendants have failed to demonstrate "mutually antagonistic" defenses or "'specific instances of legally cognizable prejudice,'" *Jimenez*, 2011 U.S. Dist. LEXIS 8888, at *16-17 (citing *Harwood*, 998 F.2d at 95), "so great as to deprive [the defendants] of [their] right to a fair trial." *Bellomo*, 954 F. Supp. at 649 (quoting *Casamento*, 887 F.2d at 1149), their motions for severance should be denied.[5] [6]

---

[5] Wright's brief makes a single oblique reference to a "significant evidentiary disparity." (Wright Br. at 12). To the extent Wright seeks severance on this basis, his motion should be denied for two reasons. *First*, even if it were true, all of the evidence admissible against Carton would in any event be admissible against Wright in a separate trial. *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir.1993) ("A defendant's right to a fair trial does not include the right to exclude relevant and competent evidence. Thus, the fact that testimony against a codefendant may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant tried separately. Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial.").

*Second*, "it is well established that defendants who played a minor role in a conspiracy may be tried with those who played a larger or dominant role." *United States v. Ferrarini*, 9 F. Supp. 2d 284, 290 (S.D.N.Y. 1998) (citing *Cardascia*, 951 F.2d at 483); *Casamento*, 887 F.2d at 1153. A "disparity in the quantity of evidence and of proof of culpability are inevitable in any multi-defendant trial, and by themselves do not warrant a severance." *Cardascia*, 951 F.2d at 48.

[6] Neither of the defendants have provided an affidavit, or even asserted, that they would waive their Fifth Amendment privilege and testify at the other's severed trial. Under well-established

## II.     Carton's Motion to Dismiss Count Three of the Indictment Should Be Denied

Carton's motion to dismiss Count Three of the Indictment is frivolous.  The Indictment not only tracks the language of the securities fraud statute, which under Second Circuit law is alone sufficient, but goes well beyond what is required, describing particulars of the scheme and Carton's participation in it.  The motion should be denied.

### A.  Applicable Law

"Pursuant to Federal Rule of Criminal Procedure 7, 'the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'"  *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir.)  (quoting Rule 7(c) (alterations omitted)).  To satisfy this rule, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks omitted); *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999)  (citing *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)).

The Second Circuit has "repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity."  *Walsh*, 194 F.3d at 45.  While the indictment must give a defendant "sufficient notice of the 'core of criminality' to be proven against him," *United States v. Pagan*, 721 F.2d 24, 27 (2d Cir. 1983) (quoting *United States v. Sindona*, 636 F.2d 792, 797-98 (2d Cir. 1980)), the "'core of criminality' of an offense involves the essence of a crime, in general

---

Second Circuit law, any such argument is therefore foreclosed.  *See, e.g., Mumuni v. United States*, 2018 U.S. Dist. LEXIS 17670, at *6 (S.D.N.Y. Jan. 31, 2018) ("As for the viability of any severance motion, Mumuni offers no affidavit by Ganiyu regarding his willingness to testify at a separate trial, or what exculpatory testimony, if any, he might offer. That Ganiyu elected to assert his Fifth Amendment right and not testify at the joint trial, suggests that he would have done the same at a severed, separate trial for Mumuni.").

terms," and not "the particulars of how a defendant effected the crime." *United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012); *see also United States v. Coffey*, 361 F. Supp. 2d 102 (E.D.N.Y. 2005) ("[T]he indictment does not have to specify evidence or details of how the offense was committed."). Moreover, "[a]n indictment must be read to include facts which are necessarily implied by the specific allegations made." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). "[C]ommon sense and reason prevail over technicalities." *United States v. Sabbeth*, 262 F.3d 207, 218 (2d Cir. 2001).

Although there are circumstances in which greater specificity is required to pass muster under Rule 7(c) and the constitutional provisions it implicates, that heightened standard is limited to "very rare cases," such as those involving refusal to answer questions before Congress, in which "specification of how a particular element of criminal charge will be met . . . is of such importance to the fairness of the proceeding that it must be spelled out in the indictment." *United States v. Stringer*, 730 F.3d 120, 125-26 (2d Cir. 2013) (discussing the special case of *Russell v. United States*, 369 U.S. 749 (1962)).

Otherwise, "[a]n indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Stringer*, 730 F.3d at 124 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Lee*, 833 F.3d 56 (2d Cir. 2016) (same); *Yannotti*, 541 F.3d at 127 (same).

Even in cases involving very bare-bones charges, courts will not dismiss the indictment absent a showing of prejudice. *Stringer*, 730 F.3d at 124. Where a defendant has been given sufficient notice of the charges against him by means of, for example, a criminal complaint or

discovery, prejudice will not have been shown, and the indictment should stand.  *See, e.g., id.* at 124-25; *Yannotti*, 541 F.3d at 127.

Moreover, it is well settled that a facially valid indictment is not subject to challenge based on the quality or quantity of evidence.  *See United States v. Williams*, 540 U.S. 36, 54 (1992).  A defendant's arguments about the sufficiency of the evidence should be raised at trial and not in a motion to dismiss.  *United States v. Trochelmann*, 1999 U.S. Dist. LEXIS 6769, at *6 (S.D.N.Y. May 10, 1999) ("[I]t is well settled that a facially valid indictment is not subject to challenge based on the quality or quantity of evidence. Defendant's argument should be raised at the trial in this matter, and not in a motion to dismiss.") (internal citation omitted).  *See also United States v. Cremer*, 2012 U.S. Dist. LEXIS 182320, at *7 (S.D.N.Y. Dec. 13, 2012) ("The law clearly provides that the Government is not put to its proof as to the sufficiency of the evidence prior to trial. In other words, there is no 'summary judgment' equivalent to Rule 56 of the Federal Rules of Civil Procedure in criminal cases.").

### B.  Discussion

Carton seeks dismissal of Count Three of the Indictment on two grounds: for failure to satisfy the pleading requirements of Fed. R. Crim. P. 7(c) and pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v) for failure to state an offense.  Both arguments fail.

### 1.   The Indictment Satisfies the Pleading Requirements of Rule 7(c).

Carton first asserts that Count Three does not satisfy the basic pleading requirements of Rule 7(c) because it allegedly "fails to plead that Mr. Carton possessed fraudulent intent at the time the agreement was entered into with the Hedge Fund . . ." (Carton Br. at 1, 3, 11-12).  Carton's motion is without merit for at least three separate reasons.

18

*First*, Count Three tracks the language of the securities fraud statute, explicitly alleging that the defendants "willfully and knowingly . . . used and employed . . . in connection with the purchase and sale of securities, *manipulative and deceptive devices and contrivances* . . . (Indictment ¶ 20 (emphasis added); *Id.* ¶¶ 20(a)-(c) (alleging that the scheme included the manipulative devices and contrivances set forth in 17 CFR § 240.10b-5)).

Under well-established Second Circuit law, this alone is sufficient to meet Rule 7(c)'s pleading requirement. *See United States v. Frias*, 521 F.3d 229, 235 (2d Cir. 2008) ("Typically, to state an offense, an indictment 'need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms.'") (quoting *United States v. Flaharty*, 295 F.3d 182, 198 (2d Cir. 2002) (internal quotation marks, citation, and ellipsis omitted); *Yannotti*, 541 F.3d at 127 ("[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.") (quoting *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)).

*Second*, this Indictment contains even more specific factual allegations as to intent, including that the defendants obtained investor funds through "misrepresentations." For example, and among other things, the Indictment contains the following specific allegations:

- "After receiving investor funds *based on misrepresentations*, CARTON, WRIGHT, and CC-1 [Meli] misappropriated those investor funds, using them to, among other things, pay personal debts and repay prior investors as part of a Ponzi-like scheme." (Indictment ¶ 11 (emphasis added)).

- "In or about the spring of 2016, CARTON made *additional misrepresentations* to the Hedge Fund regarding the status of its investment." (Indictment ¶ 16(h) (emphasis added)).

- " . . . CARTON and WRIGHT solicited investments in ventures related to the purchase and re-sale of tickets to live events *through materially false*

19

*misrepresentations* and then misappropriated investor funds for their own use and the use of others, and aided and abetted the same."  (Indictment ¶ 20 (emphasis added)).

The Indictment thus plainly alleges that Carton made misrepresentations in order to obtain investor funds, which he then misappropriated.  Carton complains that the Indictment only "provides a general description of alleged conduct without descending into particulars."  (Carton Br. at 11).  But Carton's attempt to create a specificity requirement is contrary to Second Circuit precedent which has "repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity."  *Walsh*, 194 F.3d at 45; *D'Amelio*, 683 F.3d at 418 (Indictment need not plead "the particulars of how a defendant effected the crime"); *Coffey*, 361 F. Supp. 2d at 111 ("[T]he indictment does not have to specify evidence or details of how the offense was committed.").[7]

Carton fixates on the Indictment's allegations that he misappropriated investor funds, arguing that the Indictment does not allege that he intended to misappropriate the money "at the time the investment was made."  (*See, e.g.*, Carton Br. 11).  But as discussed above, the Indictment tracks the statutory language and moreover alleges multiple times that Carton made "misrepresentations" to obtain the investor funds, which plainly and expressly pleads fraudulent intent.  Rule 7(c) requires nothing more.

*Third*, the Indictment does, in fact, contain allegations reflecting Carton's intent to misappropriate investor funds *at the time* he solicited them.  In particular, the Indictment alleges

---

[7] Notably, the detailed Complaint and extensive discovery material produced in this case provide even more notice and evidence of Carton's criminal intent.  *Stringer*, 730 F.3d at 124-125 (noting that where a defendant has been given sufficient notice of the charges against him by means of, for example, a criminal complaint or discovery, prejudice will not have been shown, and the indictment should stand); *Yannotti*, 541 F.3d at 127.

that *just four days* after Carton solicited a $700,000 investment from the Hedge Fund for use "to finance the CARTON Entity's purchase of tickets to live events," (Indictment ¶ 16(h)), Carton and Wright misappropriated the entirety of that investment. (Indictment ¶ 16(c)). That Carton misappropriated the Hedge Fund's investment just days after receiving it demonstrates his fraudulent intent. *Stavroulakis*, 952 F.2d at 693 ("An indictment must be read to include facts which are necessarily implied by the specific allegations made."); *Sabbeth*, 262 F.3d at 218 ("[C]ommon sense and reason prevail over technicalities.").

Likewise, in response to an e-mail from Wright that "additional debts would be coming due," Carton stated he was trying to solicit an investment. (Indictment ¶ 16(d)). Five days later, Carton obtained a $2 million investment from the Hedge Fund, (Indictment ¶ 16(e)), which the defendants almost immediately misappropriated. (Indictment ¶ 16(f), (g)). These allegations – showing that the defendants repeatedly misappropriated investor funds almost immediately after receiving them – plainly manifest an intent *ab initio* to misappropriate the Hedge Fund's investment.

The cases cited by Carton are wholly irrelevant. The indictment in *United States v. Gonzalez*, 686 F.3d 122 (2d Cir. 2012) was found deficient because it did not allege drug quantity, an essential element of the offense, and was not saved by a reference to a statutory citation. Here, however, as set forth above, the Indictment adequately alleges – expressly, in words – all of the elements of securities fraud. In *United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000), the indictment alleged only that the defendant had failed to report on a corporate tax return certain "ownership interests," while the Court found that no law required such disclosure. And *Russell v. United States*, 369 U.S. 749 (1962) involved the special case of a defendant charged with refusing to

21

answer a question pertinent to the subject under inquiry before a congressional subcommittee, but the indictments did not say what the subject under inquiry was.

None of these cases is even marginally relevant.  Here, consistent with Rule 7(c), Count Three not only tracks the statutory language and contains the elements of the securities fraud offense, but goes well beyond what is required, alleging in several places that the defendants obtained investor funds through "misrepresentations" and almost immediately misappropriated those investments.  Carton's motion to dismiss Count Three should therefore be denied.

### 2. Carton's Motion to Dismiss Count Three Under Rule 12(b)(3)(B)(v) Should be Denied

Carton's motion to dismiss Count Three for failure to state a claim is meritless for the same reasons.  As set forth above, Count Three tracks the statutory language and alleges all of the elements of securities fraud, including criminal intent.  (Indictment ¶¶ 11, 16, 20).

At bottom, Carton's complaint is that the Indictment does not contain enough "specifics." (Carton Br. 14).  That is not true, as discussed above.  But in any event, specificity is not what the law requires. *Coffey*, 361 F. Supp. 2d at 111 ("[T]he indictment does not have to specify evidence or details of how the offense was committed.").  Carton's motion under Rule 12(b)(3)(B)(v) should therefore be denied.[8]

---

[8] The cases cited by Carton here too are inapposite.  Unlike the Indictment in this case, the indictment in *United States v. Berlin*, 472 F.2d 1002 (2d Cir. 1973) contained not even a bare allegation that the defendant knew of the falsity of the statements and/or documents that he submitted in connection with a mortgage.  Here, to the contrary, the Indictment explicitly alleges that the defendants employed "manipulative and deceptive devices and contrivances"; "willfully" made "misstatements" to obtain the investments; and misappropriated investor funds immediately after receiving them.  (Indictment ¶¶ 11, 16, 20).  And *United States v. Bongiorno*, 2006 U.S. Dist. LEXIS 24830 (S.D.N.Y. May 1, 2006) involved the question whether the Government's sole theory (as conceded by the Government) constituted securities fraud statute as a matter of law. Here, the issue is not one of legal sufficiency but rather the sufficiency of the factual allegations

III.   **Carton's Motion to Suppress Evidence Obtained From His Phone Should Be Denied**

Carton's motion to suppress evidence obtained from his cellular phone should be denied because the agent's affidavit is support of the application for the warrant set forth more than sufficient probable cause to believe that evidence of crime would be found on the phone. Magistrate Judge Parker properly so found and correctly issued the warrant.

A.  **Relevant Facts**

On September 8, 2017, Magistrate Judge Katharine Parker issued a search and seizure warrant for two cellular phones, which were seized respectively from Carton and Wright in connection with their arrests on September 6, 2017 (the "Warrant," attached hereto as Exhibit A). The Warrant was issued on the basis of an application attaching a sworn affidavit by Federal Bureau of Investigation ("FBI") Special Agent Sean Sweeny, dated September 8, 2017 (the "Affidavit," attached hereto as Exhibit B).  The Affidavit attached and incorporated by reference the 16-page Complaint, which had been approved on September 5, 2017 by Magistrate Judge Andrew J. Peck.

The Affidavit and the incorporated Complaint set forth ample facts demonstrating probable cause to believe that evidence of the Subject Offenses – defined in the affidavit to be 18 U.S.C. §§ 1343 (wire fraud); and 1956 and 1957 (money laundering); 15 U.S.C. §§ 78j(b) & 78ff and 17 CFR § 240.10b-5 (securities fraud), and conspiracies and attempts to commit these offenses – would be found in the phone seized from Carton in connection with his arrest (the "Carton Phone").

The Affidavit first summarized the substantial facts in the attached Complaint demonstrating Carton's participation in the fraudulent scheme.  (Affidavit ¶ 8; Complaint ¶¶ 10-

---

in the Indictment.  The Indictment plainly meets the minimal pleading standard required under Rule 7(c).

15).   In particular, the Affidavit set forth that Carton, along with Wright and Meli, "worked together to solicit individuals and entities to invest in the bulk purchase of tickets to live events, which would be re-sold at a profit on the secondary market." (Affidavit ¶ 8).  In soliciting these investments, Carton and Meli "both provided potential investors with purported agreements that gave MELI and CARTON access to purchase blocks of tickets to live events.   In fact, these agreements were fraudulent, and MELI and CARTON had not, in fact entered into these agreements."   (*Id.*).   "After receiving investor funds based on these false representations, CARTON, WRIGHT, and MELI misappropriated those funds, using them to, among other things, pay personal debts and to repay prior investors as part of a Ponzi-like scheme." (*Id.*).

The Complaint, which was incorporated by reference and attached to the Affidavit, describes in even greater detail the extensive evidence of Carton's involvement in the scheme – including Carton's numerous lies to the Hedge Fund, Carton's creation of fraudulent documents, and the defendants' misappropriation of millions of dollars of investor funds, including Carton's use of those funds to pay casinos. (Complaint ¶¶ 10-15).

The Affidavit then described substantial evidence that Carton and his co-conspirators made extensive use of text messaging and e-mail in furtherance of the conspiracy and the charged conduct.  As set forth in the Affidavit:

> "As noted in the Complaint, WRIGHT and CARTON *repeatedly used text and e-mail messages to communicate with each other and with MELI* regarding their debts, including money owed to investors; their efforts to repay these debts by, among other things, misappropriating investor funds; and information pertaining to their bank accounts, which was then used to transfer and launder misappropriated investor funds."

(Affidavit ¶ 12 (emphasis added)).

The Affidavit goes on to recount multiple examples of text messages between and among Carton and his co-conspirators in furtherance of the fraud.  (*See* Ex. B., Affidavit, pp. 4-5 (quoting Complaint ¶¶ 11(a)-(d), 12(d), 14(a)-(c), (g), 15(g))).  These were only a sampling of the numerous text messages and e-mails described in the Complaint between and among Carton and his co-conspirators evidencing the Subject Offenses, all of which was incorporated by reference in the Affidavit.[9]

The Affidavit further describes extensive text message and phone contact between Carton and his co-conspirators just after Meli learned on or about January 26, 2017 that he was under investigation by the FBI for fraud.  In particular, on or about that critical day: (1) "MELI and CARTON exchanged multiple text messages"; (2) "there were approximately 15 calls or attempted calls between CARTON and WRIGHT on January 26 and 27, 2017"; and (3) the three co-conspirators engaged in coordinated phone contact.  For example, "[a]t 4:06 p.m., on January 26 . . . there was an eight-minute call between CARTON's phone and WRIGHT's phone; followed by several text messages between CARTON and MELI between 4:15 and 4:21 p.m.; followed by a 12-minute call between CARTON, and WRIGHT beginning at 4:38 p.m."  (Affidavit ¶ 13).

---

[9] *See, e.g.*, Complaint ¶ 11(e) (describing an October 12, 2016 e-mail from Wright to Carton stating, in substance, that he had been asking investors to refinance their investments and that "as you know, it's a game"); ¶ 12(a) (describing an October 12, 2016 text message from Carton to Meli and Wright regarding his solicitation of an investment), ¶ 12 (e) (describing a December 6, 2016 text message from Carton stating, in substance, that Carton "[a]greed" with Meli to misappropriate the Hedge Fund's investment), ¶ 12(f) (describing a an December 7, 2016 e-mail from Carton to the Hedge Fund transmitting five fraudulent agreements), ¶14(a) (describing December 2016 e-mails from Wright to Carton about Wright's unrelated debts), ¶14(f) (describing a December 18, 2016 e-mail from a representative of the Hedge Fund to Carton regarding its decision to invest), ¶15(d) fn. 5 (describing a December 18, 2016 e-mail from Wright to Carton containing wire routing information for a bank account that received the fraud proceeds).

The Affidavit expressly and forthrightly explained that Carton's counsel had informed the Government that Carton "had begun using [Carton's Phone] in or about March 2017, i.e., after the events described above." (Affidavit ¶ 14). Nonetheless, the Affidavit provided additional facts showing that Carton continued using his phone after March 2017 to communicate with his co-conspirator, Wright, and to lie to the victim Hedge Fund. (Affidavit ¶ 14). In particular, the Affidavit set forth:

- "[T]oll records show over 200 calls between WRIGHT and CARTON between March 1, 2017 and June 26, 2017, the last date for which the Government currently has records." (Affidavit ¶ 14).

- "[A]fter March 2017, CARTON continued to conceal from the Hedge Fund that he, WRIGHT, and MELI had misappropriated its money, almost immediately after it was invested in December 2016, *including by making misrepresentations in phone communications*. . . . The Hedge Fund Employee stated, in sum and substance, that, as of the date of the interview, the Hedge Fund was still waiting for their money back, and CARTON had advised the Hedge Fund's money was being held in account controlled by "MICHAEL," i.e. WRIGHT; that CARTON continually provided excuses when asked to wire the money back to the HEDGE FUND, including that his "partner," "MICHAEL," was on vacation and would be able to make the transfer when he returned. (Affidavit ¶ 14 (emphasis added)).

Special Agent Sweeny further related that "based on my training and experience, I know that even where a user has changed phones, data from an old phone may be transferred to the new phone." (Affidavit ¶ 14).

Finally, the Affidavit stated that "like individuals engaged in many other kind of activities, individuals who engage in securities fraud, wire fraud, and money laundering store records relating to their illegal activity and to persons involved with them in that activity on electronic devices such

26

as the Subject Devices[, including the Carton Phone]." (Affidavit ¶ 15).  The Affidavit further explained that "[i]ndividuals engaged in criminal activity often store such records in order to, among other things, (1) keep track of co-conspirator's contact information; (2) keep a record of illegal transactions for future reference; (3) keep an accounting of illegal proceeds for purposes of, among other things, dividing those proceeds with co-conspirators . . ."  *(Id.).*

### B.  Applicable Law

#### 1.  Review of a Magistrate Judge's Finding of Probable Cause

"A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists. . . . The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (internal citations omitted) (reversing suppression order); *United States v. Snape*, 116 Fed. Appx. 317, 319 (2d Cir. 2004) ("Courts conducting an after the fact review of a judicial officer's decision to issue a warrant based on probable cause pay great deference to the issuing judge's determination of probable cause."); *United States v. Nichols*, 912 F.2d 598, 602 (2d Cir. 1990) ("A magistrate's finding of probable cause to believe that evidence of a crime would be found on a defendant's premises is entitled to substantial deference . . .").

"A judge's probable cause determination is not overly strict.  Presented with a warrant application, the judge must 'simply . . . make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Martin*, 426 F.3d 68, 74

(2d Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (internal quotation marks omitted).

Probable cause "does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience."  *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004).  And "an affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation."  *United States v. Mandell*, 710 F. Supp. 2d 368, 373 (S.D.N.Y. 2010) (quoting *United States v. Awadallah*, 349 F.3d 42, 67 (2d Cir. 2003)).

"The quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity . . . .'"  *Wagner*, 989 F.2d at 72 (quoting *Gates*, 462 U.S. at 235). Moreover, "[p]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules."  *Martin*, 426 F.3d at 74 (quoting *Gates*, 462 U.S. at 232).  Thus, "[i]n assessing probabilities, a judicial officer must look to 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  *Walczyk v. Rio*, 496 F.3d 139, 156 157 (2d Cir. 2007) (quoting *Gates*, 462 U.S. at 231).

### 2.  The Good Faith Exception to the Exclusionary Rule.

Under the "good faith" exception, "the exclusionary rule barring illegally obtained evidence from the courtroom does not apply to evidence seized in 'objectively reasonable reliance on' a warrant issued by a detached and neutral magistrate, even where the warrant is subsequently deemed invalid."  *United States v. Jasorka*, 153 F.3d 58, 60 (2d Cir. 1998) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).  In announcing this principle, the Supreme Court noted that suppression could have no deterrent effect on law enforcement agents who acted on the objectively

28

reasonable assumption that their conduct did not violate the Fourth Amendment. *Leon*, 468 U.S. at 918-19. In analyzing the applicability of the good faith exception, the pivotal question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23.

If the reviewing court finds that the officer's reliance on the warrant was objectively reasonable, suppression is not warranted. *See, e.g., Singh*, 390 F.3d at 183. Moreover, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009).

The good faith exception is inapplicable only to situations: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 923); *United States v. Falso*, 544 F.3d 110, 125 (2d. Cir. 2008). As the Supreme Court has observed, "[r]easonable minds frequently may differ on the question whether a particular affidavit established probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Leon*, 468 U.S. at 914. "In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or [her] judgment that the form of the warrant is technically sufficient." *Id.* at 921.

### C.  Discussion

Carton's motion to suppress should be denied because the Affidavit contains ample probable cause to believe that the Carton Phone, which he began using in March 2017, contains evidence of the Subject Offenses.  But even if the Court were to find probable cause lacking, the good faith exception applies and the evidence should not be suppressed.

**1.  The Affidavit Contained Ample Probable Cause to Issue the Warrant.**

As an initial matter, Magistrate Judge Parker's probable cause finding is entitled to "substantial deference" under Second Circuit law.  *Wagner*, 989 F.2d at 72 ("A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists . . ."); *Snape*, 116 Fed. Appx. at 319 (reviewing court affords "great deference to the issuing judge's determination of probable cause").

Apart from this deference, however, the Affidavit goes well beyond what is required to demonstrate probable cause.  Carton appears to concede that probable cause exists as to the phone Carton used before March 2017 to engage in extensive text and e-mail communications in furtherance of the fraud, but argues that there is no probable cause as to the phone he began using in or about March 2017.  This argument is flawed for at least three reasons.

*First*, the very fact that Carton made extensive use of text messaging and e-mail for months prior to March 2017 gives rise to a reasonable inference that he continued to use the same means of communication for the same purposes when he got his new phone.  There would be no reason to believe that Carton – who "repeatedly used text and e-mail messages to communicate" with his co-conspirators and the victim about the scheme, (Affidavit ¶ 12) – suddenly stopped using these means of communication in furtherance of the ongoing scheme when he got a new phone.  Nothing in the Affidavit suggests otherwise.  *Cf. United States v. Mathis*, 767 F.3d 1264, 1275 (11th Cir.

30

2014) ("Even if the affidavit had stated that Mathis possessed a different phone in 2011 than the phone he used to contact Jarvis in 2004, . . . .the affidavit provided probable cause sufficient to support the issuance of a warrant").

*Second*, the Affidavit describes substantial evidence that Carton did, in fact, continue to use his new phone – the Carton Phone – after March 2017 in furtherance of the scheme.  Indeed, after March 2017, Carton used that new phone both (a) to make more than 200 phone calls with his co-conspirator, Wright; and (b) to "mak[e] misrepresentations in phone communications. . ." to the Hedge Fund. (Affidavit ¶ 14).  The Affidavit thus expressly sets forth facts showing that Carton continued to use his phone after March 2017 in furtherance of the fraud.

Carton complains that the Affidavit does not provide "specifics" as to the content of the conversations between Carton and Wright or the specific misrepresentations Carton made by phone to the Hedge Fund after 2017. (Carton Br. at 7).  Not true.  The Affidavit expressly describes the misrepresentations Carton was continuing to make to the Hedge Fund: "CARTON had advised the Hedge Fund's money was being held in account controlled by "MICHAEL," i.e. WRIGHT"; and that Carton's "'partner,' "MICHAEL," was on vacation and would be able to make the transfer when he returned." (Affidavit ¶ 14).   These statements were plainly false, as the defendants had long before misappropriated the Hedge Fund's investment.  (Affidavit ¶ 7; Complaint ¶ 14).  The Hedge Fund's money was not in Wright's account; it had gone to pay the defendants' personal debts and casinos.

In any event, the probable cause standard does not require the "specifics" Carton demands. *See, e.g.*, *Wagner*, 989 F.2d at 72 ("The quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity . . . .'") (quoting *Gates*, 462 U.S. at 235); *Singh*, 390 F.3d at 182 (probable cause "does not require direct evidence and

may be based on reasonable inference from the facts presented based on common sense and experience"). That Carton continued after March 2017 to use the Carton Phone to communicate extensively with Wright and make misrepresentations to the Hedge Fund provided more than enough probable cause to justify issuance of the Warrant.

*Third*, the Affidavit provided a sufficient basis for Magistrate Judge Parker to make the additional common sense inference that, upon getting a new iPhone, Carton, like many phone users, had transferred his data – including contacts, messages, and e-mails – to his new phone. (*See* Affidavit ¶ 14 ("[B]ased on my training and experience, I know that even where a user has changed phones, data from an old phone may be transferred to the new phone.")). In light of the massive quantity of important electronic data many people store on their smartphones, such an inference is entirely reasonable, if not likely. *See, e.g.*, *Walczyk*, 496 F.3d at 156-57 ("In assessing probabilities, a judicial officer must look to 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" (quoting *Gates*, 462 U.S. at 231).[10]

This case is nothing like *United States* v. *Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), heavily relied upon by Carton. In that case, the "supporting affidavit . . . offered almost no reason to suspect that Griffith in fact owned a cell phone, or that any phone or other device containing incriminating information would be found in his apartment." *Griffith*, 867 F.3d at 1268. Here, to the contrary, the Affidavit set forth comprehensive evidence both that Carton owned a cell phone

---

[10] Indeed, the Affidavit expressly provides that "individuals who engage in securities fraud, wire fraud, and money laundering store records relating to their illegal activity and to persons involved with them in that activity on electronic devices such as the [Carton Phone]." (Affidavit ¶ 15). Thus, the facts set forth in the Affidavit make it likely that Carton would have "store[d]" evidence of the crime by backing it up onto his new device.

and used it extensively in furtherance of his crimes.  Magistrate Judge Parker thus correctly found

probable cause and issued the Warrant, and Carton's motion should be denied.

### 2.  The Good Faith Exception Applies

Even if the Court were to conclude that the Affidavit did not contain adequate probable

cause, the search was nonetheless conducted in good faith reliance on Magistrate Judge Parker's

issuance of the Warrant.  *Jasorka*, 153 F.3d at 60. Leon, 468 U.S. at 918-19.  In analyzing the

applicability of the good faith exception, the pivotal question is "whether a reasonably well trained

officer would have known that the search was illegal despite the magistrate's authorization." *Leon*,

468 U.S. at 922 n.23.

Here, no reasonably well trained agent would have had any reason to know that, despite

Magistrate Judge Parker's issuance of the Warrant, the search was illegal.  Nothing in the Affidavit

was false or misleading and, as discussed, above, the Affidavit set forth substantial facts

demonstrating strong reasons to believe that the phone contained evidence of the Subject

Offenses.[11]

Accordingly, even if the Court determines that the Affidavit was lacking in probable cause,

the search was justified under the good faith exception.

### IV.  Wright's Motion for *Brady* Should be Denied as Moot and Wright's Motion for Early Disclosure of *Giglio* Material Should be Denied as Premature

Wright moves for an order directing the government to disclose all *Brady* material and

for early disclosure of *Giglio* material.

---

[11] Thus, this case presents none of the situations where courts have held the good faith exception is inapplicable: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable."  *Moore*, 968 F.2d at 222 (citing *Leon*, 468 U.S. at 923); *accord Falso*, 544 F.3d at 125.

33

As to Wright's *Brady* request, no such order is unnecessary.  The Government recognizes its obligations under *Brady* and has acknowledged its *Brady* obligations in correspondence with defense counsel.   While the Government is not aware of any *Brady* material, should the Government become aware of any, it will produce it promptly.  As a result, the defendants' request for an order compelling the production *Brady* material should be denied.  *See, e.g.*, *United States* v. *Gallo*, No. 98 Cr. 338 (JGK), 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying defendant's motion to compel production of *Brady* material based on Government's representations that "it is aware of its obligations under *Brady* . . . and will produce any *Brady* material to the defense well before trial"); *United States* v. *Yu*, No. 97 Cr. 102 (SJ), 1998 WL 57079, at *4-5 (E.D.N.Y. Feb. 5, 1998) (denying defense request that Government provide early disclosure of *Brady* material because Government acknowledged its continuing obligation to provide exculpatory material upon its discovery and assured that it would comply with that obligation); *United States* v. *Perez*, 940 F. Supp. 540, 553 (S.D.N.Y. 1996) (same).

With regard to the timing of disclosing material under *Giglio* the Second Circuit, in *United States* v. *Coppa*, 267 F.3d 132 (2d Cir. 2001), rejected the argument that such material should be disclosed when defendants make a demand for it.  *Id.* at 146.  The court held that as a general rule, *Brady* and its progeny do not require immediate disclosure of all *impeachment* material upon request of a defendant.  *Id.*  It found that the time required for its effective use would depend on the materiality of the evidence as well as the particular circumstances of the case, and suggested that district courts may order disclosure of material it deems material as a matter of case management.  *Id.*

There is no need for early disclosure of *Giglio* material in this case. The Government intends to provide the defense with *Giglio* material at a reasonable time before trial, according to

a schedule set by the Court.  Further, providing *Giglio* material at the same time as Jencks Act material is consistent with the practice in this District.  *See, e.g.*, *United States* v. *Trippe*, 171 F. Supp. 2d 230, 237 (S.D.N.Y. 2001). ("The usual practice in this district is that the Government agrees to make impeachment information available to the defense at the same time as Jencks Act material, that is, at least one day before the Government witness is called to testify"); *United States* v. *Rueb*, 00 Cr. 91, 2001 WL 96177 (RWS), at *6-7 (S.D.N.Y. Feb. 5, 2001) (Government directed to provide *Giglio* material at least one day before calling the relevant witness to testify). Accordingly, Wright's demand should be denied.

## **CONCLUSION**

For all of the foregoing reasons, the defendants' pretrial motions should be denied in their entirety.

Dated: June 8, 2018
New York, New York


Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:      _____/s/_____
Brendan Quigley
Elisha Kobre
Assistant United States Attorneys
Telephone: (212) 637-2599/2190

**AFFIRMATION OF SERVICE**

I, Elisha J. Kobre, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury that:

I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.

On June 8, 2018, I caused a copy of the Government's Memorandum of Law In Opposition to Defendants' Pretrial Motions to be served via ECF on counsel for Craig Carton and Michael Wright.

Dated: June 8, 2018
      New York, New York

Respectfully submitted,

 /s/ Elisha J. Kobre
Elisha J. Kobre
Assistant United States Attorney