UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

UNITED STATES OF AMERICA,

- v. -

CRAIG CARTON, and
MICHAEL WRIGHT,

Defendants.

———————————————————— x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  7/10/18
```

17 CR 680 (CM)

**DECISION AND ORDER ON DEFENDANTS' PRETRIAL MOTIONS**

McMahon, C.J.:

Defendants Craig Carton and Michael Wright are charged in a three-count indictment with conspiracy to commit securities fraud and wire fraud, in violation of 18 U.S.C. § 371, wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, and securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 CFR § 240.10b-5 and 18 U.S.C. § 2.

Before the Court are (1) Carton's and Wright's motions for severance, (2) Carton's motion to dismiss Count Three of the Indictment, (3) Carton's motion to suppress evidence obtained from a cell phone seized from him incident to arrest and searched pursuant to a search warrant, and (4) Wright's motion for *Brady* material and early disclosure of *Giglio* material.

The Indictment

The Indictment alleges that from in or about August 2016 through in or about August 2017, Carton, Wright, and Joseph Meli (a co-conspirator referred to in the Indictment as "CC-1"), worked together to "solicit individuals and entities to invest in and finance the bulk purchase of tickets to live events, which would be re-sold at a profit on the secondary market."

1

(Indictment ¶ 11). These investments were solicited through misrepresentations by the conspirators. (*Id.*). Upon obtaining the investor funds, the three conspirators "misappropriated those investor funds, using them to, among other things, pay personal debts and repay prior investors as part of a Ponzi-like scheme." (*Id.*).

As part of that scheme, Carton, Wright, and Meli communicated with each other in December 2016 about "a potential agreement between [Carton] and [an investment management firm identified as the "Hedge Fund"], relating to the purchase of tickets to live events." (Indictment ¶ 16(a)). Carton and Meli solicited the Hedge Fund to invest a total of approximately $4.6 million "with the understanding that the money would be used to finance the purchase of tickets to events promoted by," among other things, two companies: a California based company in the business of promoting live music and entertainment events (the "Concert Promotion Company") and a New York based company that operated two arenas (the "Sports and Entertainment Company"). (Indictment ¶¶ 8-10, 12). Carton and Meli further represented to the Hedge Fund that "the tickets would then be re-sold in the secondary market." (Indictment ¶ 12).

On or about December 8, 2016, Carton formally entered into an agreement with the Hedge Fund under which the Hedge Fund would finance the purchase of tickets to live events for resale by a company established by Carton (the "Carton Entity") purporting to be in the business of purchasing tickets to live events and reselling those tickets at a profit. (Indictment ¶¶ 5, 16(b)). Wright represented himself as the Chief Financial Officer ("CFO") of the parent company of the Carton Entity. (Indictment ¶ 5). The Indictment alleges that, contrary to the representations to the Hedge Fund, the conspirators used the Hedge Fund's investment, among

2

other things, to repay prior unrelated debts, including gambling debts; and the Indictment provides actual examples of this misappropriation. (Indictment ¶¶ 16(b)-(h)).

### Defendants' Motions for Severance

In support of their motions for severance, defendants rely principally on the affidavit of attorney Jonathan M. Davidoff, who represented Wright in this case from the time of Wright's arrest through November 29, 2017, when Davidoff withdrew from this case. Davidoff withdrew after the Government and Carton filed motions seeking to have him disqualify as Wright's counsel, based on the possibly that he (Davidoff) might be a sworn or unsworn witness at trial and thus had a potential conflict of interest. (Dkt. # 32, 34). Davidoff now says that he is "prepared to testify about my first-hand knowledge of matters that appear to be central to the charges in this case"; "can testify to matters that strongly support the defense that Wright did not knowingly participate" in the charged offense; and that he overheard certain statements by Carton following Carton's arrest which he claims exculpate Wright. (Davidoff Aff. ¶¶ 7-10).

In further support of the motion, Wright's current attorney, Alan Futerfas, submitted an affidavit stating that he (Futerfas) had discussions with a prospective witness who "may be willing to testify" in a way that would "be advantageous to Michael Wright but detrimental to Craig Carton," but "has not yet been able to secure an affidavit from the witness." (Futerfas Aff. ¶ 3).

A defendant seeking severance under Federal Rule of Criminal Procedure 14 has the "extremely difficult burden of proving not merely that he would be prejudiced by a joint trial, but that the prejudice would be so great as to deprive him of his right to a fair trial." *United States v. Bellomo*, 954 F. Supp. 630, 649 (S.D.N.Y. 1997) (quoting *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989)) (quotation marks omitted). The mere fact that two defendants advance defenses that are adversarial to one another "does not, alone,

require trials to be severed. . . . Were this true, a virtual ban on multi-defendant conspiracy trials would ensue since conspirators raise many different and conflicting defenses." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1992). "Mere fingerpointing does not require severance." *Casamento*, 887 F.2d at 1154. To even consider severance the defenses be "mutually antagonistic" (*see United States v. Yousef*, 327 F.3d 56, 151 (2d Cir. 2003)—that is, "the defenses must conflict to the point of being so irreconcilable as to be mutually exclusive" meaning that "in order to accept the defense of one defendant, the jury must of necessity convict a second defendant." *Cardascia*, 951 F.2d at 484.

However, even "mutually antagonistic defenses are not prejudicial *per se*," and severance is not required when defendants adopt antagonistic defenses "even if prejudice is shown." *Zafiro*, 506 U.S. at 538-39. Rather, when defendants adopt mutually antagonistic defenses, severance is appropriate only if defendants can demonstrate "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. *See also Scott*, 637 F. App'x at 13 ("It is not enough to demonstrate that separate trials would have increased the chances of the appellant's acquittal . . . the defendant must instead show prejudice so severe that his conviction constituted a miscarriage of justice and amounted to a denial of a constitutionally fair trial") (quotations and quotation marks omitted).

"At the threshold, defendants must articulate 'specific instances of legally cognizable prejudice.'" *United States v. Jimenez*, 2011 U.S. Dist. LEXIS 8888, at *16-17 (S.D.N.Y. Jan. 26, 2011) (citing *United States v. Harwood*, 998 F.2d 91, 95 (2d Cir. 1993) (internal quotation marks and citation omitted). "In those rare instances where a defendant establishes a 'high' risk of prejudice, however, 'less drastic measures, such as limiting instructions, often will suffice to

cure any risk of prejudice.'" *United States v. Abakporo*, 2013 WL 6188260, at \*3 (S.D.N.Y. Nov. 25, 2013) (quoting *Zafiro*, 506 U.S. at 539). In such a case, "the tailoring of the relief to be granted, if any, [is left] to the district court's sound discretion." *Id.*

Here, defendants' have failed to articulate any specific adversarial defenses such that "accepting one defense requires that the jury must of necessity convict a second defendant." *Yousef*, 327 F.3d at 151 (2d Cir. 2003). As to the Davidoff Affidavit, it is vague, conclusory, and devoid of any specific evidence Wright intends to elicit that will require the jury "*of necessity* [to] convict [Carton]." *Yousef*, 327 F.3d at 151 (emphasis added). The only specific testimony Davidoff purports to offer is a single hearsay statement purportedly made by Carton after his arrest that Wright was "innocent" and had "nothing to do with *it*." As a threshold matter, this statement—which, incredibly, Davidoff never disclosed to the Court when he sought to stay on as Wright's counsel—is plainly inadmissible as hearsay. It is not a statement in furtherance of the conspiracy, nor is it not a post-arrest admission of Carton's guilt.

Even if the Court were to admit Davidoff statement, it would not necessitate a jury finding Carton guilty. Carton's purported statement that Wright is "innocent" does not preclude a jury finding that Carton is similarly not guilty. And the meaning of "nothing to do with it" is far from clear, as e-mails, text messages, and bank records demonstrate Wright's personal and direct participation in the scheme. (*See, e.g.*, Indictment ¶ 16; Complaint ¶¶ 10-15). To the extent this statement is interpreted as relating to intent, Carton's assertion that Wright lacked criminal intent does not require or even suggest an inference that Carton himself had such intent.

The remainder of Davidoff's submission—including his conclusory assertions that he "can testify to matters that strongly support" Wright's innocence and that he has "first-hand

knowledge of matters that appear to be central to the charges in this case"—are plainly insufficient under Second Circuit law, which "[a]t the threshold" requires that the defendants "articulate 'specific instances of legally cognizable prejudice.'" *Jimenez*, 2011 U.S. Dist. LEXIS 8888, at \*16-17 (citing *Harwood*, 998 F.2d at 95).

As for Futerfas's claim that he is trying to get an affidavit from some witness who "may be willing" to testify in a way that would be "advantageous to Michael Wright but detrimental to Craig Carton" (Futerfas Declaration ¶ 3): Until counsel identifies the witness and reveals exactly what the witness intends to say—in an affidavit from the witness himself—there is nothing to decide.

Defendants reliance on *United States v. Copeland*, 336 F. Supp. 2d 223 (EDNY 2004) and *United States v. Shkreli*, 260 F. sup. 3d 246 (EDNY 2017) is unavailing. In *Copeland*, three men were indicted for robbing a bank. One defendant, Vasquez, said he intended to call a third party witness (one who was not being called by the Government), who would identify the other two as having entered the bank but who would testify that Vasquez did not enter the bank. The court (Block, J.) agreed that this necessitated separate trials for Vasquez and the other two defendants, since Vasquez's defense (it was the other two guys but not me)— buttressed by the testimony of a disinterested third party identification witness—was inconsistent with Copeland's defense (I was not there), as well as the government's theory, a scenario in which "[t]he jury may convict Copeland based upon either the government's theory or Vasquez's theory." *Copeland*, 336 F. Supp. 2d at 224-25. Judge Block acknowledged that this was a "rare" grant of severance.

Unlike in *Copeland*, where the defendant submitted specific facts regarding the antagonistic defenses, the defendants here have not shown that their defenses cannot both be

6

"logically accept[ed]" by a jury. *Id.* at 224. Wright's defense of lack of knowledge or intent (Wright Br. at 12; Carton Br. at 11) does not require a jury to find that Carton is guilty. And, unlike *Copeland*, Wright's proposed defense is not "in contradiction of the government's theory" such that "[t]he jury may convict [Carton] based upon either the government's theory or [Wright]'s theory." *Id.* at 225. This case does not present the type of "rare circumstances" present in *Copeland*.

Likewise, *United States v. Shkreli*, presented another 'unique" circumstance. One defendant was a trader; the other defendant (not third party witness) was the trader's lawyer. The trader intended to rely on an advice of counsel defense; the lawyer intended to say that his client had not told him everything needed to give correct advice. Judge Matsumoto decided that these defenses—far more "antagonistic" than the defenses in our case—were not "mutually antagonistic" within the Second Circuit's rule, which is that one would have to convict Defendant B if one believed the defense of Defendant A. Nonetheless, she granted the motion for severance, because Greeble's lawyer (the lawyer for the lawyer) swore under oath that he intended to argue that Shkreli was guilty as sin but Greeble was simply a victim of Shkreli's nondisclosure. I have not seen any such affidavit in this case; Wright's lawyer has not said that he intends to argue that Carton is guilty, only that Carton said Wright was innocent.

Bottom line, no one has identified any testimony that Davidoff might give that is on all fours with the testimony of the disinterested witness in *Copeland*. Accordingly, Defendants' motions for severance is denied.

7

Carton's Motion to Dismiss Count Three

Carton asks the Court to dismiss Count Three of the Indictment for failure to satisfy the

pleading requirements of Fed. R. Crim. P. 7(c), and for failure to state an offense as required by

Fed. R. Crim. P. 12(b)(3)(B)(v). Carton claims *inter alia* that Count Three "fails to plead that

Mr. Carton possessed fraudulent intent at the time the agreement was entered into with the Hedge

Fund . . ." (Carton Br. at 1, 3, 11-12; Carton Reply 4-10).

Rule 7(c) requires that an indictment or information provide a plain, concise, and

definite written statement of the essential facts constituting the offense charged.  To satisfy

this rule, "an indictment need do little more than to track the language of the statute charged

and state the time and place (in approximate terms) of the alleged crime." *United States v.*

*Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks omitted); *United States*

*v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (citing *United States v. Tramunti*, 513 F.2d 1087,

1113 (2d Cir. 1975)).  Likewise, "an indictment is sufficient [for purposes of Rule

12(b)(3)(B)(v)], if it 'first, contains the elements of the offense charged and fairly informs a

defendant of the charge against which he must defend, and, second, enables him to plead an

acquittal or conviction in bar of future prosecutions for the same offense.' " *United States v.*

*Stringer*, 730 F.3d 120, 124 (2d Cir.2013) (quoting *Hamling v. United States*, 418 U.S. 87,

117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)).

Here, Count Three tracks the language of the securities fraud statute, explicitly

alleging that the defendants "willfully and knowingly . . . used and employed . . . in

connection with the purchase and sale of securities, *manipulative and deceptive devices and*

*contrivances* . . . (Indictment ¶ 20 (emphasis added); *Id.* ¶¶ 20(a)-(c) (alleging that the scheme

included the manipulative devices and contrivances set forth in 17 CFR § 240.10b-5)).  That

8

alone is sufficient to meet the pleading requirement. However, the indictment also contains specific factual allegations alleging that the defendants obtained investor funds through "misrepresentations" and almost immediately misappropriated those investments. (*See* Indictment ¶ 16(d-h). Nothing more is required for pleading purposes. Carton's motion in this regard is essentially a motion to dismiss based on the sufficiency of the evidence—a motion more properly made after the Government has presented its case at trial.

The motion to dismiss Count Three is denied.

### Carton's Motion to Suppress Cellphone Evidence

On September 8, 2017, Magistrate Judge Katharine Parker issued a warrant to search two cellular phones, which were seized respectively from Carton and Wright in connection with their arrests on September 6, 2017. Carton has filed a motion seeking to suppress any evidence derived from the search of his phone, arguing that the search warrant authorizing the seizure of his phone was facially insufficient as it failed to provide adequate probable cause to search the device. Carton's central complaint with the warrant is that the affidavit in support of the warrant deals principally with communications involving Mr. Carton **before March 2017;** Carton only acquired the subject "iPhone" in March 2017— a fact acknowledged by the warrant's affiant, Special Agent Sean Sweeney of the FBI. (Carton Br. at 1).

"A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists. . . . The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (internal citations omitted) (reversing suppression order). "A judge's probable cause determination is not overly

strict. Presented with a warrant application, the judge must 'simply . . . make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Martin*, 426 F.3d 68, 74(2d Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (internal quotation marks omitted). "The quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity . . . .'" *Wagner*, 989 F.2d at 72 (quoting *Gates*, 462 U.S. at 235).

Under the "good faith" exception, "the exclusionary rule barring illegally obtained evidence from the courtroom does not apply to evidence seized in 'objectively reasonable reliance on' a warrant issued by a detached and neutral magistrate, even where the warrant is subsequently deemed invalid." *United States v. Jasorka*, 153 F.3d 58, 60 (2d Cir. 1998) (quoting *UnitedStates v. Leon*, 468 U.S. 897, 922 (1984)). The good faith exception is inapplicable only to situations: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 923); *United States v. Falso*, 544 F.3d 110, 125 (2d. Cir. 2008).

Here, Special Agent Sweeney's affidavit in support of the warrant goes well beyond what is required to demonstrate probable cause. The fact that Carton made extensive use of text messaging and e-mail for months prior to March 2017 gives rise to a reasonable inference that he continued to use the same means of communication for the same purposes when he

10

got his new phone. And the affidavit expressly sets forth facts showing that Carton did indeed

continued to use his phone after March 2017 in furtherance of the fraud:

> On September 7, 2017, counsel for CARTON informed the Government that
> CARTON had begun using Subject Device-1 in or about March 2017, i.e., after the
> events described above. Nonetheless, toll records show over 200 calls between
> Wright and Carton between March 1, 2017 and June 26, 2017, the last date for
> which the Government has records. Moreover, after March 2017, Carton continued
> to conceal from the Hedge Fund that he, Wright, and Meli had misappropriated its
> money, almost immediately after it was invested in December 2016, including by
> misrepresentations in phone communications.

(Affidavit ¶ 12).   There would be no reason to believe that Carton—who "repeatedly

used text and e-mail messages to communicate" with his co-conspirators and the victim

about the scheme—suddenly stopped using these means of communication in

furtherance of the ongoing scheme when he got a new phone. Nothing in the Affidavit

suggests otherwise. *Cf. United States v. Mathis*, 767 F.3d 1264, 1275 (11th Cir. 2014)

("Even if the affidavit had stated that Mathis possessed a different phone in 2011 than

the phone he used to contact Jarvis in 2004, . . . .the affidavit provided probable cause

sufficient to support the issuance of a warrant").

Carton also complains that the affidavit does not provide "specifics" as to the content

of the conversations between Carton and Wright or the specific misrepresentations Carton

made by phone to the Hedge Fund after 2017. (Carton Br. at 7).  However, the affidavit

expressly describes the misrepresentations Carton was continuing to make to the Hedge Fund:

"CARTON had advised the Hedge Fund's money was being held in account controlled by

"MICHAEL," i.e. WRIGHT"; and that Carton's "'partner,' "MICHAEL," was on vacation and

would be able to make the transfer when he returned." (Affidavit ¶ 14). These statements were

plainly false, as the defendants had long before misappropriated the Hedge Fund's

investment. (Affidavit ¶ 7; Complaint ¶ 14). The Hedge Fund's money was not in Wright's

account; it had gone to pay the defendants' personal debts and casinos. In any event, the

probable cause standard does not require the "specifics" Carton demands. *See, e.g., Wagner*,

989 F.2d at 72 ("The quanta of proof necessary to establish probable cause is 'only the

probability, and not a prima facie showing, of criminal activity . . . .'") (quoting *Gates*, 462

U.S. at 235). That Carton continued after March 2017 to use the Carton Phone to

communicate extensively with Wright and make misrepresentations to the Hedge Fund

provided more than enough probable cause to justify issuance of the Warrant.

This case is nothing like *United States* v. *Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), relied

upon by Carton. In that case, the "supporting affidavit . . . offered almost no reason to suspect

that Griffith in fact owned a cell phone, or that any phone or other device containing

incriminating information would be found in his apartment." *Griffith*, 867 F.3d at 1268. Here, to

the contrary, the affidavit set forth comprehensive evidence both that Carton owned a cell

phone and used it extensively in furtherance of his crimes. Magistrate Judge Parker thus

correctly found probable cause and issued the Warrant.

Even if the Court were to conclude that the affidavit in support of the warrant did not

contain adequate probable cause (a conclusion the court most certainly has not reached), the

search would stand nonetheless since it was conducted in good faith reliance on Magistrate

Judge Parker's issuance of the warrant, and none of the criteria that counsel against the

application of the good-faith exception are present in this case.

Carton's motion to suppress is denied.

*Brady, Giglio*/Jenks Act, 404(b) and Other Disclosures and Filings

Wright moves for an order directing the government to disclose all *Brady* material and

for early disclosure of *Giglio* material.

The Government represents that it recognizes its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and is not aware of any undisclosed *Brady* material, but will turn over any *Brady* materials it uncovers in a timely fashion. (Govt. Memo at 34). The Court accepts the Government's representation, but reminds the Government that "timeliness" with respect to *Brady* disclosure means immediate disclosure upon discovery.

Given the relative complexity of this case, the Government shall provide defendants with all impeachment and Jencks Act material one month prior to trial.

The Government shall provide 404(b) notice six weeks prior to trial. All *in limine* or 404(b) motion – by either the Government or the defendant – must be filed one month prior to trial, with opposition papers due three weeks prior to trial. The Court will rule on the motions at the final pretrial conference.

The Government will provide defendant with a list of the witnesses it intends to call, the Friday before the trial week those witnesses are scheduled to testify. Should defendants elect to call witnesses, defendants will reciprocate by providing the Government with similar notice of the witnesses to be called.

Proposed *voir dire* questions and all request-to-charge are to be submitted prior to the final pre-trial conference.

This constitutes the decision and order of the Court.

July 10, 2018

_____

Chief United States District Court Judge

13