**ALAN S. FUTERFAS**

ATTORNEY AT LAW

565 FIFTH AVENUE, 7TH FLOOR

NEW YORK, NEW YORK 10017

(212) 684-8400

ELLEN B. RESNICK
RICHARD F. BRUECKNER

asfuterfas@futerfaslaw.com

BETTINA SCHEIN
OF COUNSEL

March 6, 2018

**VIA ECF**
The Honorable Colleen McMahon
Chief Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007



Re: *United States v. Michael Wright*, 17 Cr. 680 (CM)

Dear Judge McMahon:

On behalf of Michael Wright, we write to address several issues raised by the Government's Sentencing Memorandum (the "Govt. Memorandum" or "Sentencing Memorandum"), filed on February 28, 2019 (ECF 164) and the Courts' Notice to Parties, filed on March 4, 2019 (ECF 166) in response to the Government's Memorandum. First, the government breached its plea agreement with Mr. Wright when, in the Govt. Memorandum, it advocated against the minor role deduction. Second, we dispute facts and conclusions that the government alleges in the Govt. Memorandum, and we note our objections raised to the Draft Pre-Sentence Report dated December 12, 2018 (the "Draft PSR") and included in the final Pre-Sentence Report (the "PSR"). Third, consideration of a downward variance under 18 U.S.C. § 3553(a) is warranted in this case pursuant to *United States v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995) and its progeny.

### I. The United States Probation Office Fully Supports a Minor Role Adjustment and Recommends a Sentence of One Year and One Day

The United States Probation Office ("Probation") agrees that a minor role adjustment is appropriate. In the revised final Probation Report ("PSR"), dated February 7, 2019, the PSR begins its analysis by stating that it has received and reviewed evidence provided by the FBI, specifically, the case agent's involvement in the investigation and his interviews and analysis of records and facts. (PSR at para. 12). Moreover, the final, revised PSR was prepared months after the Carton trial. Based on the evidence provided by the government, the PSR concludes that a minor role adjustment is appropriate. (*Id.* at para. 77, 124).

Honorable Colleen McMahon
March 6, 2019
Page 2

Of equal importance to the PSR determination that a minor role adjustment applies, is the recommendation of a sentence of a year and a day incarceration. It does so for several reasons, including the following:



(PSR at Sentencing Recommendation, page 30)

The PSR's finding of minor role is fully supported by the accurately stated facts of this case. First, Carton committed an entire securities fraud offense that Mr. Wright did not. The 26-page SEC securities fraud Complaint, attached hereto, describes a litany of false representations to individuals and institutions, created statements, false documents and forged signatures that Mr. Wright did not participate in or know anything about. Indeed, that was the bulk of the government's evidence presented at trial. Even under the civil standard of preponderance of the evidence, Mr. Wright was not charged in the SEC Complaint with liability of any kind, including direct liability, aiding and abetting a securities fraud, or conspiracy to commit a securities fraud. And of the civil lawsuits filed against Carton, none includes Mr. Wright. In conversations with the government on Monday, the government reiterated and confirmed that they have no evidence that Mr. Wright participated in or knew about the voluminous misrepresentations made to ticket investors, including the Hedge Fund, much less Carton's phony documents and forgeries. For this principle reason, among others stated below, the government's assertion in its Sentencing Memorandum that Mr. Wright "was a full, knowing participant in the scheme" (Govt Memorandum at p. 2), is simply not true. Mr. Wright was excluded from the vast bulk of the scheme, which was the misrepresentations to investors, the creation of false documents, and the forgeries committed to corroborate the false documents.

Second, as we set forth in detail in our sentencing memorandum (at pages 3-9), Carton appeared to Mr. Wright, and the world, as a highly successful businessman and radio personality who, significantly, had major business and legal contacts throughout the business world. The sales pitch to Mr. Wright by Carton was that of a legitimate and ground-breaking business model to capitalize on the inflated values of after-market ticket prices. Mr. Wright believed in and trusted Carton. As the PSR states, (PSR at page 30).

Third, and as we show in detail below, Mr. Wright invested his own money in Carton's various gambling deals, just like the other investors. And the monies that he personally received were just the return of Mr. Wright's own investments with Carton with interest. A careful estimate shows that, for the entire period of his relationship with Carton, Mr. Wright made about $150,000 in interest – the same amount he is owed by Carton. *See* n. 4, *infra*.

ALAN S. FUTERFAS
Honorable Colleen McMahon
March 6, 2019
Page 3

Fourth, both the plea agreement in this case and the allocution were negotiated and approved by the government after months of discussions and meetings between the parties about the facts. The government's decision to ascribe a "minor role" to Mr. Wright was made carefully and deliberately. The plea was entered on September 27, 2018, just one month before trial. The plea agreement accomplished for both sides a resolution of the case without trial. The agreement took into account factual disputes and the strengths and weaknesses of the government's case and Mr. Wright's defenses.

## II.   The Government Breached the Plea Agreement with Mr. Wright.

The government breached the plea agreement with Mr. Wright. Plea agreements are reviewed "*de novo* and in accordance with principles of contract law." *United States v. Robinson*, 634 F. App'x 47, 49 (2d Cir. 2016) (Summary Order) quoting *United States v. Rivera*, 298 F.3d 128, 133 (2d Cir. 2002). "Plea agreements are unique contracts[] and the Court should "temper the application of ordinary contract principles with special due process concerns for fairness and the adequacy of procedural safeguards." *Robinson*, 634 F. App'x at 49 quoting *United States v. Granik*, 386 F.3d 404, 413 (2d Cir.2004). Plea agreements are construed "strictly against the government[,]" and the Court should "not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness." *Robinson*, 634 F. App'x at 49 quoting *United States v. Vaval*, 404 F.3d 144, 152 (2d Cir.2005) (internal quotation marks omitted). Statements that the government does not intend to violate the plea agreement "do not ... insulate the government against a finding of breach if in fact what was said constituted an argument" barred by the agreement. *Robinson*, 634 F. App'x at 49 quoting *Vaval*, 404 F.3d at 153.

*United States v. Robinson* is directly on point. In *Robinson*, the defendant argued that the government breached the plea agreement, which precluded the government from arguing for a role enhancement, because, in arguing "that a sentence within the stipulated Guidelines range was appropriate[,]" *Robinson* at 50, "in describing the offense conduct, the government stated that the evidence at trial would have established beyond a reasonable doubt that Robinson was an active, managing member of the criminal conspiracy and that Robinson 'held a managerial role' in the conspiracy." *Id.* (internal citations omitted).

The Second Circuit held that the government breached the plea agreement,[1] notwithstanding that "[t]he government did not explicitly request a role enhancement, and stated

---

[1] Concerning the remedy, in *Robinson* the Second Circuit held that:

[T]he government's September 3 sentencing submission breached the plea agreement by advocating for a role enhancement, we must vacate the judgment and remand the case for resentencing. As we have previously recognized, such a breach requires remand to a different judge, who will not be influenced by the government's earlier sentencing advocacy. *See Vaval*, 404 F.3d at 156. Such a reassignment of course reflects no criticism of Judge Furman, who conducted the proceedings in a careful and conscientious manner.

ALAN S. FUTERFAS
Honorable Colleen McMahon
March 6, 2019
Page 4

that it was simply arguing that a sentence within the Guidelines range was appropriate, in light of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* at 50.

Here, the plea agreement's terms are similar to the terms in *Robinson*. *See Robinson* at 49; Plea Agreement Executed September 27, 2018, annexed hereto as Exhibit A (hereinafter the "Plea Agreement." Both the *Robinson* agreement as described by the Second Circuit, and the government's agreement with Mr. Wright, set forth the agreed upon guidelines, allowed the parties to seek a sentence outside of the guidelines based on § 3553(a) factors, and allowed the parties to answer questions from probation or the Court.

Moreover, the government's breach of the plea agreement is much more profound than in *Robinson*. The government here advocates against the minor role deduction throughout its entire submission by undermining each and every factor to be considered under USSG 3B1.2(b). The assertions undermining the minor role factors are ubiquitous in the Govt Memorandum. They are also conclusory and gratuitous. *See Robinson* at 50 – 51. These include, but are certainly not limited to, the government's assertions concerning the breadth of Mr. Wright's knowledge and the transfer of $966,000. As discussed *infra*, both of these assertions are misleading.

In the first example, the government asserts that:

> From at least in or about August 2016 through at least in or about January 2017, Wright participated in a calculated, closely-planned, multi-million dollar scheme, with co-conspirators Carton and Meli, to defraud investors in a purported ticket business the three claimed to operate.
>
> Wright was a full, knowing participant in the scheme.

(Page 2). What the government knows, but does not tell the Court, is that there is no evidence that Mr. Wright had any knowledge whatever of the entire securities fraud scheme, i.e., that Carton and Meli were fabricating documents, forging signatures or sending doctored emails to Brigade.[2] That scheme, and the evidence of it, occupied most of the Carton trial. Nonetheless, and with the purpose of casting Mr. Wright's role in the offense as anything but minor, the government asserts

---

[2] The government argues that:

> Wright is a sophisticated businessman, having served for nearly a decade as Chief Operating Officer and prior to that Vice President of Marketing for a large Manhattan business. By his own admission, Wright has "extensive experience running businesses." (Def. Mem. at 4). Wright knew that a large, sophisticated hedge fund such as the Hedge Fund was not giving Carton money to repay gambling debts or for Wright to pay off his own debts.

(Page 6). Mr. Wright is not, nor has he ever been, the Chief <u>Financial</u> Officer of Jacaranda Club. His expertise is in marketing, operations and customer service. He does not have any idea how hedge funds decide to invest or where they would – or would not – invest.

Honorable Colleen McMahon
March 6, 2019
Page 5

that "Wright's participation in the fraud, while less substantial than Carton's, was nonetheless *fully knowing, serious, and brazen.*" (Page 1) (emphasis added).

In the second example, the government asserts that:

> Notably, Wright even lied to Carton and Meli, his partners in crime, for the purpose of obtaining more of the Hedge Fund's investment. In particular, Wright transferred $966,000 of the Hedge Fund's investment to his own account based upon his false representation, in an earlier e-mail, that Desmond Finger's group was owed that amount. (GX 248). In reality, however, Finger was owed only $690,000. As noted above, Wright used the remainder of the money to repay his personal home equity line of credit.

(Pages 4, 6). What the government knows, but does not tell the Court, is that Mr. Wright and Desmond Finger both invested in one of Carton's gambling investments on August 22, 2016.[3] Mr. Finger invested $500,000 and Mr. Wright invested $200,000. Mr. Carton could not repay them when he was supposed to on September 22, 2016. By December of 2016, the investments accrued $266,000 in interest total. The $966,000 was used to repay both Mr. Finger and Mr. Wright the monies they invested with interest. While it is true that Mr. Wright did not tell Mr. Carton that a portion of that money was in fact owed to Mr. Wright, that fact is irrelevant. Mr. Wright believed that if Carton knew that a portion of that money belonged to Mr. Wright, Carton would take advantage of their relationship and not return his investment. The critical fact, a fact the government knows, is that a portion of that $966,000 was the return of monies Mr. Wright had invested with Carton – just like Mr. Finger and just like other investors.

To be sure, this is the transaction that constitutes the offense to which Mr. Wright plead guilty. He accepts full responsibility for his involvement in this offense. But the government's description of these events distorts the facts in that it suggests that Mr. Wright gained hundreds of thousands of dollars when, in fact, most of that money was the repayment of monies Mr. Wright invested. Mr. Wright's actual gain was $76,000 in interest on his $200,000 investment.[4]

The effect of the government's assertions is to eviscerate the applicability of the minor role deduction. This is so even as the government gives lip service to abiding by the plea agreement as it perfunctorily argues that the minor role deduction should apply. Indeed, the Govt Memorandum prompted the Court to issue a written notice to the parties on March 4, 2019. In that notice, the Court indicates that the Govt Memorandum disproves the criteria for "minor role" contained in the Guidelines at Commentary USSG 3B1.2(b). The Court said, "I do not intend to deduct two points from his Offense Level calculation on the ground that he was a 'minor participant' in the crime. He was anything but." Notice to Parties, ECF 166 (Mar. 4, 2019).

---

[3] *See* USAO_CartonWright_54771.

[4] Mr. Wright lost that money when he reinvested $150,000 with Mr. Carton in 2017. He was not repaid.

This Court directly links its conclusion to the Government's Memorandum:

> While the Defendant may have played a lesser role in the charged scheme than did his coconspirators, *there is no way that the activity described in the Government's sentencing memorandum . . . qualifies him as a "minor participant" in the crime under USSG 3 B 1.2(b).*
>
> . . .
>
> *As set forth in the Government's sentencing memorandum . . .* Mr. Wright fully understood that he and Mr. Carton were planning to "rob Peter to pay Paul" *(see, e.g.,* GX 54, which was sent to Wright)[.]

Notice to Parties, ECF 166 (Mar. 4, 2019). For these reasons, the government has breached the Plea Agreement.

### III. The Government's Factual Assertions in Its Memorandum

The Govt. Memorandum asserts multiple sweeping allegations of fact that are inconsistent with the evidence in this case and the representations that the government has made to this office about their understanding of the facts. The government has represented to our office, and the evidence in this case demonstrates, that Mr. Wright was completely absent from the misrepresentations to the hedge fund. The government is well aware that there is no evidence that Mr. Wright was involved in, or had any awareness of: the creation of false agreements or documents; the dissemination of false agreements or documents to the hedge fund; and the creation of forged documents; all of which were instrumental to the government's case against Carton. The government has also acknowledged that Mr. Wright took no part in the solicitation of the hedge fund's investment. Thus, to make the assertion that, "Mr. Wright's participation in the fraud, while less substantial than Carton's, was nonetheless fully knowing, serious, and brazen[,]" (Page 1) and that he fully engaged in the planning or organizing of that activity, is just false.

The government's memorandum also made a number of factual assertions that are demonstrably misleading and incorrect. The government's eleventh-hour introduction of arguments about Mr. Wright's understanding of the text messages and communications is prejudicial, unfair, and a clear breach of the plea agreement between the parties. *See United States v. Robinson*, 634 Fed. Appx. 47 (2d Cir. 2016) and Point II, *supra*. For example, in explaining government exhibit 54, the government asserts that Mr. Wright understood that in a text message, "Meli expressly proposed to both Wright and Carton misappropriating the Hedge Fund's loan to 'repay the debts[.]'" (Page 3).

In reality, Mr. Wright at the time read that poorly written, long winded text message as Mr. Meli informing Mr. Carton that he should not use the hedge fund's money to repay debts as the math would never work. This text message was sent in the context of side conversations between Mr. Meli and Mr. Carton to which Mr. Wright was not privy. The government is aware that the

ALAN S. FUTERFAS
Honorable Colleen McMahon
March 6, 2019
Page 7

text message in exhibit 54 is ambiguous, and that there are multiple underlying back stories and communications that surround the context of that message.[5]

The problem with all of this – emanating from the arguments contained in the Govt. Memorandum – is that it has put Mr. Wright in the position of litigating facts and making arguments that he would have asserted had he gone to trial. But we did not go to trial and both sides entered a plea agreement to avoid a trial. And, we hesitate to respond to the inaccuracies lest it create the appearance that Mr. Wright has not accepted responsibility. Thus the Govt. Memorandum, undercutting its agreement that Mr. Wright qualifies for a minor role, has placed Mr. Wright in an untenable position.

To put it bluntly, the government's awareness of Mr. Wright's ability to introduce evidence and testimony that would have immensely complicated their case as to Carton is one of the reasons why both parties were motivated to reach a plea agreement in the first place. Indeed, the case as to Michael Wright is exponentially more complicated than the one that the Court heard as to Carton, precisely because Mr. Wright's involvement is so attenuated. The SEC, which filed a Complaint on September 6, 2017 against Mr. Carton and Mr. Meli, did not even bring charges against Mr. Wright despite its lower burden of proof.[6] *See Securities and Exchange Commission v. Craig H. Carton and Joseph Meli et. al.* 1:17-cv-06764-LGS (ECF 1). The SEC's description of the facts in that Complaint demonstrates certainly one powerful reason why Mr. Wright was granted a minor role by the government.

The government began investigating this case in January 2017, when Mr. Carton's co-conspirator Joseph Meli was arrested. Mr. Wright was arrested in September 2017 and he and the government reached a plea agreement on September 27, 2018, a month prior to start of Mr. Carton's trial on October 29, 2018. By the time that Mr. Wright entered his, the government had been preparing for trial for an entire year. The government made an offer of a minor role deduction because they had thoroughly reviewed all of the discovery, which is vastly more expansive than the evidence that was both introduced at Mr. Carton's trial and was discussed in the Govt. Memorandum, and the government understood that Mr. Wright qualified for the deduction. The government agreed that all of the discovery shows that Mr. Wright's understanding of: the scope and structure of the criminal activity; the degree to which Mr. Wright engaged in the planning or organizing of that activity; the degree to which Mr. Wright exercised decision-making authority;

---

[5] The government glosses over complex facts to reach simple conclusions about Mr. Wright's culpability throughout its Memorandum. For example, the government makes much ado about an email Mr. Wright wrote to Carton suggesting ways to resolve debt that was coming due. (Page 2). All of the suggestions proposed by Mr. Wright are legal, such as asking to extend the due date of loan coming due or taking a home equity line. Mr. Wright's final suggestion, to "[r]un to Costa Rica, change name and start life all over again – may not be an option[.]" was clearly meant in jest to raise Mr. Carton's spirits. Indeed, the point of the humor seems to be to remind Carton that the scenario is not so catastrophic that he needs to run to Costa Rica.

[6] We have annexed as Exhibit B, a copy of the SEC Complaint to this letter. Mr. Wright is identified as "Associate – 1" in the Complaint.

the nature and extent of Mr. Wright's activity; and the degree to which Mr. Wright stood to gain from the activity-- all demonstrate that Mr. Wright is eligible for a minor role deduction.

Mr. Wright has taken full responsibility for his actions and the money that he received from the hedge fund. He has agreed to pay forfeiture to the United States in the amount $346,128 and to pay restitution in an amount to be determined.

IV. **A Below Guidelines Sentence Pursuant to 18 U.S.C. § 3553(a) is Warranted in this Case**

The government asserts in its memorandum that this "Court should reject Wright's risible attempt to obtain leniency on the ground that he is allegedly indispensable to a Manhattan-based strip club where he is employed."[7] (Page 1). This assertion distastefully insults the hundreds of people that work at Sapphire and Sapphire39. To be clear, Sapphire is a legitimate business that is a part of a greater nightlife industry that the City of New York has acknowledged as being important to the city's economy. Opposing counsel may scoff at the industry, but the reality is that these are hardworking people trying to make a living and support their families.

The government also mischaracterizes the facts of this case to assert that consideration under § 3553(a) is not warranted pursuant to the decision in *United States v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995). The government incorrectly asserts that the Second Circuit in *Milikowsky* recognized that "the business effects of a white-collar offender's incarceration generally provide no ground for departure." (Page 10). Rather, the Second Circuit acknowledged the Sentencing Commission's explanation that "courts should treat each guideline as 'carving out a "heartland," a set of typical cases' and that, '[w]hen a court finds an atypical case,' that 'significantly differs from the norm, the court may consider whether a departure is warranted.'" *Milikowsky* at *7.



---

[7] The use of the word "risible," which means "arousing or provoking laughter," reveals the government's disdain for these hardworking New Yorkers.



Thank you for your consideration of this letter.

Respectfully submitted,

Alan S. Futerfas

cc: Brendan Quigley, A.U.S.A.
Elisha Kobre, A.U.S.A.